### State v. Weaver
*[Cite as 5 AOA 169]*

*Case No. 58114*
*Cuyahoga County, (8th)*
*Decided August 16, 1990*

*John T. Corrigan, Cuyahoga County Prosecutor, Tom Conway and Steven Dever, Assistant County Prosecutors, The Justice Center, 1200 Ontario Street, Cleveland, OH 44113, for Plaintiff-Appellee.*

*David L. Doughten, Esq., 2000 Standard Building, 1370 Ontario Street, Cleveland, OH 44113, for Defendant-Appellant.*

PATTON, C.J.

Defendant-appellant Thomas Weaver ("appellant") was indicted on one count of aggravated grand theft (R.C. 2913.02) (hereinafter "Count I"), one count of grand theft (R.C. 2913.02 (hereinafter "Count II"), one count of possession of criminal tools (R.C. 2923.24) (hereinafter "Count III") and nineteen separate counts of grand theft (R.C. 2913.02). A jury returned verdicts of not guilty on Count I and guilty on Counts II, III and the nineteen separate counts of grand theft.

The facts giving rise to the charges arose out of appellant's employment at DeLorean Cadillac, Inc., where he was office manager and secretary-treasurer. Appellant functioned as the head bookkeeper and monitored the day-to-day operations of the dealership. Appellant was also responsible for signing tax returns and was authorized to sign the dealership's checks, provided the signature of either the owner and chairman of the board of DeLorean Cadillac, Charles DeLorean or his son and general manager, Mark DeLorean, also appeared.

In his employment, appellant had control over the financial books and was responsible for the business records. Charles DeLorean testified he trusted appellant implicitly with the books but never authorized him to remove any records from the dealership.Slowly, DeLorean Cadillac began to computerize its operations against Charles DeLorean's wishes. One computer was eventually installed, which was under the control of appellant.

The testimony revealed DeLorean Cadillac had been a profitable business up until 1986. Charles DeLorean became suspicious when the books revealed a profit of one-quarter of a million dollars by June of 1986 but by the end of the year, the dealership had merely broken even.

Charles DeLorean called the dealership's auditor, Dale Black and Company. The auditor was asked in 1987 to review the financial records. Appellant supplied Dale Black with the necessary documentation with which to perform the audit. Upon completion of the audit, Dale Black found the records in order and all transactions completely accounted for.

Several months later, Charles DeLorean received a telephone call from a relative of the dealership's title clerk. Based on their conversation, Charles DeLorean requested a second audit.

Terry Dawson, a certified public accountant, performed an exhaustive second audit and discovered that many financial records, cancelled checks, corporate minutes and deal jackets[1] were missing.

Mr. Dawson, with the help of the dealership's bank, traced certain checks which were drawn to DeLorean Cadillac. He discovered they were substituted for cashier's checks and deposited to two accounts; either Jay Tee Investments or Thomas Craig. Mr. Dawson discovered that appellant, Thomas Craig and two other men were partners in Jay Tee Investments. The total amount disbursed to Jay Tee Investments was $110,000.

Further, appellant had arranged a plan whereby various employees of the dealership and their relatives would receive new Cadillacs, without making any payments. These Cadillacs were later traded in for newer models. The records indicated that no payments were made on the new models also. A total of fifty cars were allowed to leave the dealership in this manner.

Detective Thomas O'Grady of the Lakewood Police Department testified on behalf of the state. Detective O'Grady averred that he received a telephone call from Mark DeLorean regarding suspected thefts at DeLorean Cadillac. An investigation into the complaint ensued. Based upon the information obtained, a search warrant was conducted at appellant's residence. Detective O'Grady found numerous financial records belonging to DeLorean Cadillac. The records, a typewriter, computer paraphernalia and various papers that were scattered around the house were confiscated.

Detective O'Grady, along with his partner Detective Ronald Whitig, conducted title searches on various vehicles from the dealership. As part of the investigation, Detective O'Grady compared deal jackets, which had been mostly prepared by appellant, with titles for fifty cadillacs. He found that some cadillacs were not paid for and some were only partially paid for. Detective O'Grady's testimony corroborated that of Mr. Dawson's.

Appellant testified on his own behalf. He admitted that fifty cars did indeed leave the dealership with no payment, or virtually no payment, made. He also admitted that the paperwork con these fifty cars was intentionally deceptive. However, appellant testified that it was Mark DeLorean's idea to implement the scheme as a bonus plan for their employees.

Appellant further stated the reason he falsified the documents was to allow Mark DeLorean to receive the Master Dealer Award and the dealership to receive the $50,000 given out yearly to the dealership that sold the most automobiles.

Appellant's timely appeal assigns four errors for our review:

"I. THE STATE IMPROPERLY INDICTED THE APPELLANT FOR MULTIPLE THEFT OFFENSES IN VIOLATION OF OHIO REVISED CODE §2913.61(C).

II. THE EVIDENCE IS INSUFFICIENT TO SUSTAIN THE CHARGE OF POSSESSION OF A CRIMINAL TOOL.

III. THE TRIAL COURT UNDULY RESTRICTED THE DEFENDANT'S CROSS-EXAMINATION OF THE ALLEGED VICTIM, THEREBY DEPRIVING THE APPELLANT HIS CONSTITUTIONALLY GUARANTEED RIGHT OF CONFRONTATION.

IV. THE FAILURE TO OBJECT TO THE MULTIPLE THEFT INDICTMENTS IN VIOLATION OF §2913.61(C) CONSTITUTES INEFFECTIVE ASSISTANCE OF COUNSEL."

I.

Appellant's first assigned error challenges the propriety of the state's indictment. Appellant argues he was indicted twice for the same theft offenses. Specifically, he contends the state properly indicted him for the aggregate amount of all theft offenses pursuant to R.C. 2913.61(C) but improperly indicted him on the nineteen separate offenses comprising the aggregate value of the property involved. We agree.

R.C. 2913.61(C) reads:

"(C) When a series of offenses under section 2913.02 of the Revised Code is committed by the offender in his same employment, capacity, or relationship to another, all such offenses *shall* be

tried as a single offense, and the value of the property or services involved for the purpose of determining the value as required by division (A) of this section, is the aggregate value of all property and services involved in all offenses in the series. In prosecuting a single offense under this division, it is not necessary to separately allege and prove each offense in the series. It is sufficient to allege and prove that the offender, within a given span of time, committed one or more theft offenses in his same employment, capacity or relationship to another." (Emphasis added).

Thus, the value of the property is the aggregate value of all property involved in the series. R.C. 2913.61(C).

This court has construed R.C. 2913.61(C) to mean "*** where a person steals from his employment the total amount stolen should be added up and prosecuted as one offense." *State v. Bican* (Sept. 8, 1983), Cuyahoga App. No. 45993, unreported, at 5. Thus, the statute requires the state to allege in one count a series of offenses, such as the ones in this case. See, *State v. McMahan* (Jan. 12, 1983), Hamilton App. No. C-810728, unreported, at 8.

The requirement of aggregating the value of all property stolen serves two important purposes. First, it relieves the state from proving each offense in the series. *McMahan, supra.* To require this would be an unreasonable burden on the prosecution. R.C. 2913.61, Committee Comment. Second, it allows the state to prosecute for a felony by adding together a number of misdemeanor thefts. *Bican, supra.* The advantage to a defendant is he need only face one charge and one trial. *Id.*

We are also aided in construing R.C. 2913.61(C) by its accompanying Committee Comment which posits that embezzlement is not defined as a separate offense but is a series of offenses committed by the offender within a given span of time in his same employment. Hence, "the purpose of section (C) is to restate the offense of embezzlement as a series of theft offenses committed by an offender in his same employment ***." *State v. Henneke* (Nov. 10, 1987), Hamilton App. No. C-860665, unreported, at 4.

The Ohio Supreme Court in *State v. Doll* (1970), 24 Ohio St. 2d 130, analyzed the history and purpose of embezzlement statutes that preceded R.C. 2913.61(C). The *Doll* court stated the basic purpose of the statute is to deter a tempted fiduciary from a breach of his trust. *Id.*,

at 134. Having breached it once, any subsequent breaches during the same employment are not significant. *Id.*

In this case, appellant was indicted on twenty-two separate counts. The breakdown is as follows:

COUNT I: AGGRAVATED GRAND THEFT[2]
Date of Offense: July 1986 - Feb. 1987
COUNT II: GRAND THEFT
Date of Offense: Jan. 1977 - June, 1986
COUNT III: POSSESSION OF CRIMINAL TOOLS
Date of Offense: June 1987
COUNTS IV- GRAND THEFT -
XXII: AIDING AND ABETTING
DATE OF OFFENSES: May 1983 -
June 1987

Appellant was found not guilty on Count I, but guilty on the remaining counts. However, appellant was improperly indicted on Counts IV-XXII. These counts were necessarily aggregated under Counts I and II pursuant to R.C. 2913.61(C). Count I encompassed the theft offenses which occurred after R.C. 2913.02 was amended June 26, 1986 to include the crime of aggravated grand theft. Count II comprised the theft offenses that occurred prior to the statute's amendment. Thus, Counts IV through XXII were appropriately aggregated in Counts I and II. Therefore, Counts IV through XXII are superfluous.

Appellant was erroneously sentenced on Counts IV through XXII. Because he was found not guilty on Count I, the correct aggregate charge, he can now only be sentenced on Counts II and III.[3]

Thus, appellant was sentenced to more than twice the possible maximum of the aggregate theft charge, of which the jury acquitted him.

The legislature was cognizant of this kind of result in sentencing as explicated by the *Doll* court:

"To adhere to the state's interpretation would yield too arbitrary a result. Confronted by two convicted defendants each having embezzled six hundred dollars in ten sixty-dollar conversions, the court could force one to serve a term of one-to-ten years, and the other to serve a term of ten-to-one hundred years. Certainly the General Assembly did not intend such a result. Instead, it sought to punish the convicted defendant but once for breach of the fiduciary relationship." *Doll, supra,* at 133.

The state in *Doll* similarly argued that it could consolidate several transactions into one

charge or separate them into several charges. Id. This argument was flatly rejected by the Ohio Supreme Court when it wrote "[s]uch an argument, however, ignores the basic objective for which the statutory crime of embezzlement was designed." Id.

The state, in its brief, contends the reason for the separation into individual counts was because appellant was charged with aiding and abetting the various co-defendants; thus, he was not the principal offender. In Counts I and II, he was the principal offender. This type of argument has been rejected by this court.

In *State v. Frazier* (Jan. 11, 1990), Cuyahoga App. No. 54771, unreported, a capital murder case, the defendant's similar argument was without merit. We concluded that, unless the legislature specifically states in definitive language "principal offender," the offense of aiding and abetting is also included within the term "offender." *Id.*, at 11-12. The only logical conclusion is that the legislature did not intend for such a distinction. *Id.*, citing *State v. Jenkins* (1984), 15 Ohio St. 3d 164, 212; *Berdardini v. Board of Edn.* (1979), 58 Ohio St. 2d 1, 4. "The conventional rule is that principals and aiders and abettors stand in the same shoes." *State v. Shields* (Jan. 26, 1984), Cuyahoga App. No. 46012, unreported, at 1. (Day, J., concurring).

We note trial counsel for appellant did not object to the faulty indictment. While cognizant that generally errors not objected to at trial are deemed waived, we find this to be plain error.

The standard for plain error under Crim. R. 52(B) is whether substantial rights of the accused are so adversely affected as to undermine the fairness of the guilt determining process. *State v. Swanson* (1984), 16 Ohio App. 3d 375. It should be taken with the utmost caution and only under exceptional circumstances. *State v. Long* (1978), 53 Ohio St. 2d 91 (syllabus). We find the failure to object to the improper indictment is an exceptional circumstance which warrants this court to find plain error.

Accordingly, we sustain appellant's assignment of error and remand for re-sentencing. See, *State v. McCarty* (July 30, 1987), Franklin App. Nos. 86AP-563 and 87AP-186, unreported.

## II.

Appellant's second assignment of error challenges the sufficiency of the evidence for his conviction of possession of criminal tools. Specifically, appellant argues the state did not prove beyond a reasonable doubt that the dealership's business records and miscellaneous documents that were found in appellant's home, pursuant to a search warrant, were used to facilitate the thefts.

At the close of the state's case, appellant moved the trial court for a judgment of acquittal pursuant to Crim. R. 29(A) on Count III, the possession of criminal tools.

Crim. R. 29(A) provides:

"The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."

In *State v. Bridgeman* (1978), 55 Ohio St. 2d 261, the court set forth the standard of review for the sufficiency of evidence by holding that:

"Pursuant to Crim. R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."

Appellant was charged with possession of criminal tools in violation of R.C. 2923.24, which provides in pertinent part:

"(A) No person shall possess or have under his control any substance, device, instrument, or article, with purpose to use it criminally."

In this case, appellant admitted to taking business records home. He also admitted to falsifying documents. It is undisputed he tampered with business records which belonged to DeLorean Cadillac in order to facilitate the thefts.

Applying R.C. 2923.24 to this case, it is clear that the state had the burden of submitting evidence that appellant was in possession of bank records and financial documents with the purpose to use them criminally. *See, State v. Halczyszak, supra,* at 10-11. It is not disputed that these documents were in the possession of appellant. Moreover, we find there was sufficient evidence from which the trier of fact could reasonably conclude that appellant intended to use the business records and documents criminally to assist him in the commission of the thefts. Id, at 11.

This court has held that a certificate of title for an automobile can be a criminal tool when

the purpose is to fraudulently conceal its identity. *See, State v. Halczyszak* (Mar. 22, 1990), Cuyahoga App. Nos. 56715 and 56716, unreported. Further, a proof of loss form can be a criminal tool when it is used to facilitate a deception. *See, State v. DeMarco* (1987), 31 Ohio St. 3d 191, 197 on remand *State v. DeMarco* (Mar. 8, 1990), Cuyahoga App. No. 56616, unreported, at 5.

Upon review of the record, we find reasonable minds can reach different conclusions as to whether all the elements of possession of criminal tools have been proved beyond a reasonable doubt.

Accordingly, we overrule appellant's second assigned error.

### III.

Appellant's third assigned error contends the trial court erred in restricting the cross-examination of the state's key witness, Mark DeLorean. Specifically, appellant argues the defense should have been permitted to cross-examine Mark DeLorean about his alleged drug abuse because it was relevant to establish bias against appellant.

Evid. R. 611(B) provides:

"(B) Scope of Cross-Examination. Cross-examination shall be permitted on all relevant matters and matters affecting credibility."

It is well established that the scope of cross-examination and the admissibility of evidence during cross-examination are matters within the sound discretion of the trial court. *O'Brien v. Angley* (1980), 63 Ohio St. 2d 159, 163. Evidentiary rulings will not be reversed unless there has been a clear and prejudicial abuse of discretion. [Citations omitted.) *Id.*

The alleged bias which the defense wanted to show arose from a meeting appellant called with Charles DeLorean and two other associates The subject matter of the meeting was Mark DeLorean's alleged drug abuse and how it was affecting the business. After the meeting, Charles DeLorean approached his son, Mark. Mark denied the allegations, and the subject was dropped. According to appellant, Mark DeLorean harbored an even greater grudge against him than the one which already existed. The defense's theory is they would have been able to impeach Mark DeLorean, a key state witness, by showing his bias.

Our review of the record reveals that the defense, ~ during the cross-examination of Charles DeLorean, established bias without any specific reference to drugs, as the following testimony indicates:

"Q. Now, Mr. DeLorean, do you remember that those three gentlemen I just mentioned and Mr. Tom Weaver asking for a conference with you in August of 1986?

"Do you recall that?
"***

"A. Yes, I do.
"Q. What was the subject matter of that conference?
"***

"A. They came to me and said that Mark was involved in some things that he should not be involved in.
"Q. Did they express their concern about the ability of Mark to properly function in his position?
"A. Yes.
"Q. Okay. As a result of that conversation, did you have a conversation with Mark?
"A. Yes, I did.
"Q. What was the result of that meeting with Mark?
"A. I had concluded in my mind that Mr. Thomas Weaver had gotten so jealous and resentful of Mark being a member of management in the dealership that he would devise any methodology possible to create a barrier between my son Mark and myself.
"Q. So, Mark allayed your concerns that these gentlemen expressed to you; correct?
"He dropped it?
"A. Absolutely, absolutely.
"***

"Q. That is how you interpreted it. Okay. Anyway, after that, how was Mark's relationship with Tom Weaver at that point; do you know, up to that point, up to that conversation that the four men had with you?
"A. Extremely strained."

The defense was able to establish potential bias through the above testimony which was elicited from Charles DeLorean. We cannot find the trial court's ruling excluding testimony regarding Mark DeLorean's alleged drug habit was a clear and prejudicial abuse of discretion.

Accordingly, appellant's third assigned error is overruled.

### IV.

Appellant's fourth assigned error asserts that if this court does not find the failure to object to the faulty indictment to be plain error, appellant claims he was denied the effective assistance of counsel.

Because we sustain appellant's first assigned error, appellant's fourth assigned error is rendered moot.

Judgment affirmed in part and reversed in part and remanded for re-sentencing.

This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.

It is, therefore, considered that said appellant recover of said appellee his costs herein.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

PRYATEL, J., and MARTIN, J., concur.

---

[1] A deal jacket is a form a car salesman fills out which contains the name of the salesman, and to whom the car is sold.

[2] R.C. 2913.02 was amended June 26, 1986 to create the offense of aggravated grand theft. Hence, the state indicted appellant in Count I for all offenses which occurred after the amendment. Count II included all offenses which occurred before the amendment.

[3] Appellant was found guilty of possession of criminal tools, Count III. Appellant challenges his conviction for Count III on the sufficiency of the evidence. We find his argument lacks merit, as will be discussed under Assignment of Error II, *infra.*

Sitting by Assignment, August Pryatel, Retired Judge of the Eighth District Court of Appeals; William Martin, Judge of the Carroll County Court of Common Pleas.