## BLUEBIRD BAKING CO v McCARTHY

Ohio Appeals, 2nd Dist, Franklin Co

No 2479.   Decided May 2, 1935

Harry Kohn, Columbus, and William Wasserstrom, Columbus, for plaintiff in error.

Paul M. Herbert, Columbus, for defendant in error.

## OPINION

By BARNES, J.

This is the final order from which error is prosecuted in this court.

Plaintiff in error in its petition in error sets out nine specifications of error. In the brief of counsel for plaintiff in error these claimed errors are re-classified under 7 separate headings as follows:

(1) It was prejudicial error to permit the examination of a prospective juror on his voir dire as to his interest in an automobile casualty insurance company.

(2) The court erred in charging the jury that in awarding damages they could allow recovery for impairment of earning capacity during infancy.

(3) The court erred in admitting over the objection of plaintiff in error hearsay evidence by Dr. Chapin, an expert witness, offered by defendant in error of what one Dr. Murphy, a reputably recognized brain specialist had at one time said orally in a speech to the effect that, "If he received an injury to his head he would rather it would kill him and he would never get well, because he felt his brain would be affected to the extent that he would never have normal mentality."

(4) The trial court erred in admitting over the objection of plaintiff in error voluminous and prolonged evidence relating to injuries not pleaded in the petition.

(5) It was prejudicial error to permit the jurors with their hands and fingers to feel and manipulate the skull of defendant in error.

(6) The court erred in overruling the motion of plaintiff in error for a directed verdict in its favor at the conclusion of all the evidence.

(7) The verdict of $5000.00 was grossly excessive.

We shall take up, discuss and determine the several grounds of error in the same order as above set out.

GROUND NO. 1. IT WAS PREJUDICIAL ERROR TO PERMIT THE EXAMINATION OF A PROSPECTIVE JUROR ON HIS VOIR DIRE AS TO HIS INTEREST IN AN AUTOMOBILE CASUALTY INSURANCE COMPANY.

It appears from the bill of exceptions that during the impaneling of the jury a Mr. Trott, upon being examined on the voir dire, among other things was asked the following questions over the objection of counsel for defendant.

"Q. I am going to ask you, Mr. Trott if any of your investments are in automobile casualty insurance companies?

MR. KOHN: I object to the question and move the court to dismiss the panel.

A. Not that I know of.

THE COURT: Just a minute, that does not raise a new question.

MR. KOHN: Judge Jones expressed his opinion just recently on that proposition two or three weeks ago.

THE COURT: Objection and motion overruled.

MR. KOHN: Note an exception."

At the time of the trial, the case of **Pavilonis v Valentine, 120 Oh St, 154,** had not been modified and under the authority of that case the trial court followed the prescribed rule in overruling the objection. Following the trial and after petition in error had been filed in our court, the Supreme Court of Ohio decided the case of **Vega, Admr. v Evans, 128 Oh St, 535,** and therein reversed their former ruling. Syllabus 3 of the Vega case reads as follows:

"3. It is error to permit the examination of a prospective juror on his voir dire and as to his connection with, interest in or relationship to any liability insurance company as such unless such insurance company is party to the litigation or unless it has theretofore been disclosed to the court

by such company or by the defense that such insurance company is actively and directly interested in the litigation. (Paragraph 3 of the Syllabus Pavilonis v Valentine, supra, overruled)."

Following the decision of the Supreme Court in the Vega case, counsel for plaintiff sought a diminution of the record and the following was added:

"Upon the trial of this case before the empanelling and examination of the jury in open court but outside the hearing of the prospective jury it came to the knowledge of the court and counsel for plaintiff during an effort to compromise said case initiated by the court that defendant comcompany carried liability insurance and that counsel present represented the insurance company as well as defendant company and that no officer of defendant company was in court for trial of said case."

This court within the past month had under consideration this identical question in case No. 2509, Central Transfer and Storage Company v Frost, Franklin County, Ohio. The two cases were tried before the same trial court but to a different jury. In each case the trial judge in the absence of the jury interviewed counsel in the interest of bringing about a compromise. In each case through these negotiations it was disclosed, that counsel for defendant in reality represented an insurance company. Each case was tried before the decision of the Supreme Court in the Vega Case supra. In each case there was a diminution of the record in substantially the same form. In the Frost case the majority of our court held to the view that the inquiry of the juror on the voir dire was reversible error. In each case it was contended that since the trial court acted properly under the then existing law as announced in the Pavilonis case, the Vega case should not have a retroactive effect. We discussed this phase of the case also in the Frost case and therein cited the case of **Cummins v Sidney, 93 Oh St 328 and Volume 11 Ohio Jurisprudence, page 790, §140,** holding that under actions of this character a decision of the Supreme Court overruling or modifying an earlier precedent is retroactive in its operation.

Counsel for plaintiff in the instant case argue very persuasively that the instant case is to be distinguished from the reported case in that the inquiry was only made of one juror and under such circumstances as would show absolute good faith. If this was the only question of error in-

volved in the case, we might have considerable difficulty in satisfactorily determining this phase, but since we are of the opinion that the cause must be reversed and remanded on another ground, we pass this first ground without further comment.

GROUND NO. 2. THE COURT ERRED IN CHARGING THE JURY THAT IN AWARDING DAMAGES THEY COULD ALLOW RECOVERY FOR IMPAIRMENT OF EARNING CAPACITY DURING INFANCY.

The portion of the Court's charge objected to reads as follows:

"If you find for the plaintiff you will allow him such damages as in your judgment he is entitled to receive. The measure of his damage and recovery is compensation. In this case you can allow nothing for any expense for there is no claim made as to expense that is not the cause of action of the minor in this case and there is no evidence on the point of expense. The measure of his damages, if you find for him is compensation. In arriving at the amount you may take into consideration the nature and extent of his injuries, the permanency or lack of permanency of his injuries; the pain or suffering to which he may have been put by reason of such injuries or may be put in the future; the condition of the plaintiff at the present time and the condition that he may be in the future by reason of such injuries. The effect of such injuries upon his bodily health and his general health and **upon his ability in the future to labor and earn a living.** (Black face ours).

The record discloses that the plaintiff was a boy about 9 years of age at the time of the trial and was living with his parents. There is no claim made of emancipation. The law is very clearly established that the parents of a minor during minority are chargeable with all his expenses and also entitled to all his earnings. The trial court in his overruling motion for new trial recognized that through an inadvertence he had failed to correctly inform the jury that earnings could not be considered until the plaintiff had arrived at full age. However, in the view of the trial court he did not consider the error prejudicial, being of the opinion that it was a matter of general or common knowledge that the parents of minors were entitled to the earnings. The difficulty is that it is extremely doubtful if jurors generally understand that parents have a right of action for loss of

services and expenses incurred for the injured minor. This identical question was before the Court of Appeals of the First Judicial District in the case of **Brown v Schunk, 47 Oh Ap, 344 (18 ABS 37).** In the reported case the question arose in the introduction of the testimony and over the objection of defendant inquiry was made of a physician as to the effect of the injuries upon the earning capacity of the injured minor. The question was general in its character and no attempt was made to exclude the period of the minority. It was determined by the Court of Appeals that the action of the trial court in permitting the question to be asked and answered constituted prejudicial error.

A rather analogous situation arose in the case of **Bowe v Bowe, 5 C.C. (N.S.) 233.** In this case the Circuit Court held that the charge of the court relative to earning capacity without limitation was erroneous. We have no difficulty in arriving at the conclusion that this is the correct rule. We are constrained to the finding that the charge of the court on this phase of the case constituted prejudicial error.

Since the case may be retried, we also call attention to the state of the pleadings and the evidence as contained in the record.

The specific allegations as to permanency of injury refer to the injuries to the leg and not to the head.

The testimony of the attending physician and all others was that there had been a full and complete recovery to the injured leg.

There are no other allegations of special injuries from which its permanency might be implied. The only allegation on this subject is the following:

"At all times from the moment of receiving his injuries up to the time of filing of this petition he has suffered intense pain and agony both in mind and body and will continue to suffer in the future for a period of time to the plaintiff unknown. * * *"

Whether or not the pleader intended this to refer to the head injuries is not clear. It has been held that allegations of pain and injury which will continue in the future is not equivalent to an allegation of permanent injury. Under such allegations it is improper to admit evidence of impairment of earning capacity. **Hamilton County Agricultural Society v Helmann, 14 C.C. (N.S.) 522.**

GROUND NO. 3. THE COURT ERRED IN ADMITTING OVER THE OBJECTION

OF PLAINTIFF IN ERROR HEARSAY EVIDENCE BY DR. CHAPIN AN EXPERT WITNESS, OFFERED BY DEFENDANT IN ERROR OF WHAT ONE DR. MURPHY, A REPUTABLY RECOGNIZED BRAIN SPECIALIST HAD AT ONE TIME SAID ORALLY IN A SPEECH TO THE EFFECT THAT, "IF HE RECEIVED AN INJURY TO HIS HEAD HE WOULD RATHER IT WOULD KILL HIM AND HE WOULD NEVER GET WELL, BECAUSE HE FELT HIS BRAIN WOULD BE AFFECTED TO THE EXTENT THAT HE WOULD NEVER HAVE NORMAL MENTALITY."

Dr. Chapin a local surgeon was called as a witness by plaintiff. The plaintiff during the time that he was in the hospital was cared for by Dr. Chapin. In addition to matters that came under the personal observation of Dr. Chapin, he was interrogated as an expert. In an answer to a question propounded by counsel for plaintiff Dr. Chapin started to quote from a statement made by Dr. John P. Murphy of Chicago. Immediately counsel for defendant objected. After some colloquy between counsel and court and the statement from the witness that what he was intending to say was not from a book or publication but was a statement that the witness had heard Dr. Murphy make, the court overruled the objection and permitted the witness to continue his answer. Thereafter motion was interposed to rule out the answer. Same was overruled and exception noted. Part of the answer objected to is as follows:

"He said that if he was to receive an injury to his head of sufficient violence that it would cause unconsciousness he would rather it would kill him and he would never get well because he felt his brain would be affected to that extent."

After an examination of all authorities cited by counsel and an independent investigation of our own, we are unable to find any authority sustaining the court's ruling.

We can find no reason whereby this situation is taken out of the general rule that one witness may not be permitted to say what some other person at some time may have said. Of course, this rule has the well recognized exceptions as to declarations against interest, but the exception is in no wise applicable to the testimony of this witness. In the case of **Walker v City of Bowling Green**, 5 C.C. (N.S.) page 516, Judge Parket rendering the opinion of

the court on page 526 gives the following quotation from Bradner on Evidence, 2nd Edition, page 2:

'Hearsay is the evidence of those who relate, not what they know themselves, but what they have heard from others. Such mere recitals or assertions can not be received in evidence for many reasons, but principally for the following: First, that the party making such declarations is not on oath. And, secondly, because the party against whom, if it operates, has no opportunity of cross-examination."

In **17 Ohio Jurisprudence (Evidence) §219,** we find the following text:

"Under the principle which excludes testimony of a witness as to what he had been told concerning a matter of which he knows nothing personally, the testimony of a physician that other physicians concurred with him in his opinion is hearsay."

We understood that there has been much uncertainty among trial courts in the introduction in evidence of publications of scientific or standard works on various subjects in medicine or surgery. We think the general rule is against the admissibility of such publications. This rule has its exception in publications on subjects of exact science. It has been determined that calendars, standard works on mathematics and other similar publications may be introduced in evidence. It does not apply to publications on the various subdivisions of medicine or surgery. **22 Corpus Juris, pages 923-924 and 739** and notes thereunder.

It is permissible in cross-examination of expert witnesses to interrogate them as to claimed variance between their testimony and that contained in publications by writers of recognized skill and ability. The cases cited by counsel for plaintiff do not cover the real question involved under this allegation of error. These cited cases merely go to the qualifications of the expert. His knowledge may be based on personal experience or upon reading from standard works. It generally is based upon both. However this means of qualifying would not permit the witness to quote verbatim from any portion of the publication. When the expert gives an opinion it must be his own. We find ourselves constrained to the view that the introduction of this evidence was erroneous.

GROUND NO. 4. THE TRIAL COURT ERRED IN ADMITTING OVER THE OB-

JECTION OF PLAINTIFF IN ERROR VOLUMINOUS AND PROLONGED EVIDENCE RELATING TO INJURIES NOT PLEADED IN THE PETITION.

This ground of error is based on the contention that there was no allegation in the petition as to brain injuries and that the court did permit evidence of this character. While it is true that there could be no recovery except as claimed in the petition, yet an allegation of injury general in its character includes to a limited extent the attending effect and results. The evidence relative to a brain injury would be admissible on the further ground that it would be helpful in determining the nature and extent of the injuries set out in the petition. We find no prejudicial error as claimed in ground No. 4.

GROUND NO. 5. IT WAS PREJUDICIAL ERROR TO PERMIT THE JURORS WITH THEIR HANDS AND FINGERS TO FEEL AND MANIPULATE THE SKULL OF DEFENDANT IN ERROR.

It is claimed that the skull injury was under and concealed by the hair and thereby it could not readily be seen. The jurors were requested and permitted to place their fingers on the claimed depression whereby through the sense of touch they could know that which they could not see. We find no prejudicial error in this particular.

GROUND NO. 6. THE COURT ERRED IN OVERRULING THE MOTION OF PLAINTIFF IN ERROR FOR A DIRECTED VERDICT IN ITS FAVOR AT THE CONCLUSION OF ALL THE EVIDENCE.

This ground of error is based upon the claim that the driver of the Buick car involved in the accident admitted that he improperly drove through the red light and that this negligent act was the proximate cause of the accident.

There was other evidence that contradicted the testimony of the Buick driver. The fact that the Buick driver admitted crashing the light does not preclude all other testimony upon this subject. This question was a controverted one and consequently for determination by the jury and not by the court.

There was no error in the court's refusal to direct a verdict.

GROUND NO. 7. THE VERDICT OF $5000.00 WAS GROSSLY EXCESSIVE.

The determination of this question depends upon what evidence is accepted. If the jury had accepted the evidence presented by counsel for plaintiff, then it can

not be said to be excessive, whereas if we accept the evidence presented by counsel for defendant, it would be grossly excessive. This is entirely a jury question and under the circumstances would not be molested if no other ground of error were present. There is such sharp conflict on the question of the extent of the injuries that grounds of error No. 2 and No. 3 must be considered prejudicial. In Ground No. 2 the charge of the court instructed the jury to take into consideration an unauthorized element, which if followed augmented the amount of their verdict. Under Ground No. 3 the presentation of the evidence by Dr. Chapin over objecton, if accepted by the jury, would certainly have substantially increased the verdict. The writer of this opinion is amazed to learn that a head injury which would bring about unconsciousness spells a condition worse than death. We never knew before that such was the effect.

For the reasons assigned, the judgment of the court below will be reversed and cause remanded for new trial for further proceedings according to law.

Exceptions will be allowed.

KUNKLE, PJ, and HORNBECK, J, concur.