CITY OF LIMA, APPELLEE, *v.* FREEMAN, APPELLANT.

[Cite as City of Lima v. Freeman (1971), 27 Ohio App. 2d 72.]

(Nos. 1445 and 1446—Decided August 11, 1971.)

Mr. *Waldo Bennett Rose*, city prosecutor, for appellee.

Messrs. *Bowers, White & DeMeo*, for appellant.

TROOP, J. These appeals are from a judgment of conviction and sentence, reflecting a verdict of guilty on two charges, entered by the Lima Municipal Court February

12, 1971, and an order overruling a motion for a new trial entered March 31, 1971. (The date shown in the notice of appeal is April 1, 1971.)

Five assignments of error are offered in support of the appeals. The two numbered 3 and 4 are of the comprehensive variety, errors in the course of the trial and errors manifest on the face of the record, and are not made sufficiently more specific by the argument presented in appellant's brief to warrant much discussion. The errors, as noted by counsel in his brief concern the cross-examination of two police officers, and that subject parallels closely the problem presented in assignment of error no. 1.

Assignments of error no. 1 and no. 5 claim error on the part of the trial court in restricting the cross-examination of two of the state's witnesses, police officers Lewis and Rutledge, and of an abuse of discretion, which prevented a fair trial, in limiting cross-examination of those same officers. These two assignments of error will be considered as one. The other contention of appellant's counsel is that the verdict is against the manifest weight of the evidence and contrary to law.

Erick Freeman was arrested and charged with disturbing the peace, under section 933.01 of the codified ordinances of the city of Lima, resisting an officer, under section 969.07 of the codified ordinances of the city of Lima, and assault on a police officer, as prohibited by R. C. 2901.-252. The jury found Freeman guilty on the first two charges and not guilty of the third. These appeals deal, therefore, only with the verdict and judgment as to those two offenses which were tried jointly and continued to be combined for purposes of appeal.

Various descriptive terms have been applied to the latitude granted in cross-examination, i. e., much, large, great, wide, liberal, or reasonable. (56 Ohio Jurisprudence 2d 743, Witnesses, Section 314.) Those various degrees of latitude are not, however, without limitation. The generally recognized rule as to the extent to which cross-examination may be carried is that it rests upon the sound discretion of the trial court, and a reviewing court looks only for a possible abuse of that discretion. The fundamental

74

rules are so universally recognized as to make discussion unnecessary. (See 3 Ohio Jurisprudence 2d 749, Appellate Review, Section 770, and 56 Ohio Jurisprudence 2d 767, Witnesses, Section 332.)

Decision law supports the rule that a reviewing court, in examining a claim that cross-examination had been restricted, looks only for a possible abuse of discretion. (Illustrative cases are: *Golner* v. *State* [1912], 19 C. C. [N. S.] 571; *Smith* v. *State* [1932], 125 Ohio St. 137; and *Rutledge* v. *Hoffman, Admr.* [1947], 81 Ohio App. 85.)

In brief and in oral argument, counsel for the appellant urges that he was restricted in his cross-examination of witnesses at two specific points. The first objection was that the court stopped cross-examination of officer Lewis as to what he considered "profain [sic] and shocking," and the second, upon which counsel puts major emphasis, concerns a departmental investigation of patrolmen Rutledge and Lewis.

Prosecutor Rose asked Rutledge if an investigation of charges as to his conduct that night had been made. The answer was, "yes." Other questions and answers followed, after which the court told the jury that those questions and answers were "not necessarily material to any issue in this case," but were permitted for the limited purpose of "helping you to test the credibility or weight to be given the testimony of the witness."

Officer Rutledge was cross-examined at length. At the outset, defense counsel asked: "* * * you complied with all the questions that concerned Stratton made of you involving the interview of this thing, is this correct?" Stratton was a superior officer who investigated the charges made. Later in the cross-examination, essentially the same question was asked and the witness volunteered a comment concerning the use of "a polygraph." The court interrupted, held the answer to be not responsive and that the question had been answered previously.

At this point the jury was dismissed and a conference was held which resulted in an agreement to allow the officer to answer concerning the suggested use of a polygraph

in the investigation of the charges made against him. The officer told the court that he had never been asked directly to take a test, that he had merely indicated his willingness to but later changed his position at the request of fellow officers.

The trial court held that a refusal to take a lie detector test is not a proper fact to be considered by the jury because as a matter of law the results of the tests are not sufficiently accurate to be admitted in evidence, and concluded as follows: "nor is it a probative fact that is proper to be considered by the jury."

The attitude of the trial court toward the use of a polygraph test itself is correct. More significantly, the court's conclusion that the matter of the officer's indicated willingness to take such a test and his changing of his mind in response to the wishes of fellow officers was not a probative fact was entirely correct. Such evidence could only bear upon credibility as the court had previously, and correctly advised the jury.

The ruling of the court was not improper and was in no sense an abuse of discretion, the court having carefully considered all of the factors involved in the matter. Likewise the opinion of officer Lewis as to what was "profane and shocking" is not probative in nature.

Appellant's second assignment of error urges that the verdict is not sustained by sufficient evidence, showing a disturbance of the peace and resisting an officer, and is contrary to law.

Under Lima ordinance, no. 933.01, the peace and good order of the city may be disturbed by the use of "lascivious, obscene, profane or scandalous language." or simply " by making outcries, clamor or noise in the night." The incident here involved occurred on or about 11:45 p. m., in the night certainly, and in the month of November. The defendant "shouted," and that which he shouted a police officer was reluctant to repeat, but he did so after the trial court instructed children, and others who preferred, to leave the courtroom. The descriptive terms directed to the officers, if not profane or obscene, were lascivious and

scandalous. They were lewd, lustful, and reflected an inclination toward lechery, and were shocking to and defamatory of the officers.

The peace and good order of the city is disturbed when police officers are shocked and defamed. To urge that members of the citizenry, or one or two at least, must be offended and shocked before the peace is disturbed, ignores that important fact that a police officer is first a man, with human emotions, and a citizen before he is an officer. There is some evidence in this record that private citizens were present. Even if it be debatable as to whether the citizens heard the scandalous vulgarities, and were by them disturbed, it is sufficient if police officers alone be disturbed to constitute a violation of the ordinance.

Officer Lewis testified that he placed the defendant under arrest. He further testified that Freeman left the scene, "not at a run, but a real fast walk, or like a shuffle." As the defendant left he yelled to his brother Calvin: "Don't let them * * * pigs hurt you! I'll go get us some help." Such conduct and language indicates a knowing and willful resistance to arrest, the conduct being designed to "obstruct" and the language intended to "threaten."

The evidence was sufficiently substantial so that it cannot be said that the jury lost its way or became confused. In such a case a reviewing court will not disturb the verdict of the jury as against the manifest weight of the evidence and contrary to law. (3 Ohio Jurisprudence 2d 820, Appellate Review, Section 821.)

Appellant's assignments of error are not well taken and are overruled.

For the reasons noted, the judgment of the trial court is affirmed at appellant's costs.

*Judgment Affirmed.*

GUERNSEY, J. (Presiding), and COLE, J., concur.

TROOP, J., of the Tenth Appellate District, sitting by designation in the Third Appellate District.