O'BRIEN ET AL., APPELLANTS, *v.* ANGLEY ET AL., APPELLEES.

[Cite as O'Brien v. Angley (1980), 63 Ohio St. 2d 159.]

(No. 79-1309—Decided July 16, 1980.)

162

*Messrs. Rini, Cosiano & Pedley, Mr. Martin A. Rini* and *Mr. E. A. Pedley,* for appellants.

*Reminger & Reminger Co., L.P.A.,* and *Mr. Gary Goldwasser,* for appellees, Drs. Angley and Bartley.

*Messrs. Weston, Hurd, Fallon, Paisley & Howley* and *Mr. Jerome S. Kalur,* for appellee Lakewood Hospital.

*Per Curiam.* Appellants argue that it was prejudicial error for the trial court to allow appellees, over appellants' objection, to introduce in evidence excerpts from the editorial published in the Journal of the American Medical Association, since the thrust of the article involved litigable matters and its effect was to excite sympathy for appellees' cause.

The scope of cross-examination and the admissibility of evidence during cross-examination are matters which rest in the sound discretion of the trial judge. Thus, when the trial court determines that certain evidence will be admitted or excluded from trial, it is well established that the order or ruling of the court will not be reversed unless there has been a clear and prejudicial abuse of discretion. *State* v. *Lane* (1976), 49 Ohio St. 2d 77, 358 N.E. 2d 1081; *State* v. *Bayless* (1976), 48 Ohio St. 2d 73, 357 N.E. 2d 1035; *Smith* v. *State* (1925), 125 Ohio St. 137, 180 N.E. 695; *Lima* v. *Freeman* (1971), 27 Ohio App. 2d 72, 272 N.E. 2d 637.

Furthermore, it is generally recognized that the trial court's discretion in regulating the admissibility of evidence includes controlling the extent to which learned treatises may be used in the cross-examination of expert witnesses. *Dolcin Corp.* v. *Federal Trade Comm.* (C.A.D.C., 1954), 219 F. 2d 742, certiorari denied, 348 U.S. 981; *Lawrence* v. *Nutter* (C.A. 4, 1953), 203 F. 2d 540; *Fonda* v. *Northwestern Pub. Serv. Co.* (1940), 138 Neb. 262, 292 N.W. 712. Although the admission of learned treatises in evidence would constitute a violation of the rule against the admission of hearsay evidence, in that such evidence purports to employ testimonially a statement made out of court by a person not subject to cross-examination, 5 Wigmore on Evidence (Chadbourn Rev.), 2, Section 1362, and 6 Wigmore on Evidence (Chadbourn Rev.), 3, Section 1690, the primary justification for admitting such evidence as a limited exception to the hearsay rule is predicated upon consensus that learned treatises are inherently more trustworthy than customary forms of hearsay. 4 Weinstein's Evidence,

803-253, Section 803 (18) [01]. This view is founded upon a recognition that learned treatises are ordinarily written for members of the author's profession and, therefore, the author is thought to have no motive to misrepresent the material construed therein. A powerful incentive exists to publish a work which will be accepted by the other members of the author's profession as a fundamentally sound and authoritative exposition of the subject. Where, however, the author publishes an article with a view toward litigation, or where he possesses a personal interest in a litigable matter, a probability of bias exists which undermines the logic supporting the admission of this material in evidence as an exception to the rule against hearsay. Such publications do not as a matter of course fall within the learned treatise exception to the hearsay rule. 6 Wigmore on Evidence, *supra,* at page 6, Section 1692.[3]

In our view, the admission of excerpts of the editorial published in the Journal of the American Medical Association was prejudicially erroneous, as a perusal of that article indicates that it was written with a view toward litigation, and lacked the requisite indicia of objectivity and trustworthiness essential to the admissibility of such material in evidence. This editorial was not an authoritative exposition of medical theory or principle which might be characterized as a "learned treatise," but was primarily an expression of opinion by a physician concerning a controversial subject which posed a risk of litigation for his colleagues in the medical profession.

It should be noted that the erroneous admission in evidence of "learned treatises" will not justify reversal of an otherwise valid adjudication where the error does not affect substantial rights of the complaining party, or the court's action is not inconsistent with substantial justice. Civ. R. 61; R. C. 2309.59; Annotation, 60 A.L.R. 2d 77, Sections 2, 10. Paragraph three of the syllabus in *Hallworth* v. *Republic Steel Corp.* (1950), 153 Ohio St. 349, 91 N.E. 2d 690, states:

"Generally, in order to find that substantial justice has

---

[3] As an example of a publication whose trustworthiness should be circumspectively reviewed, 6 Wigmore on Evidence, *supra,* states at pages 6-7:

"When an expert employed by an electric company using an alternating or the single current writes an essay to show that the alternating current is or is not more dangerous to human life than a single current, the probability of bias is plain;***."

been done to an appellant so as to prevent reversal of a judgment for errors occurring at the trial, the reviewing court must not only weigh the prejudicial effect of those errors but also determine that, if those errors had not occurred, the jury or other trier of the facts would probably have made the same decision.''

It is our conclusion that substantial justice has not been done, and that the trier of the facts would probably not have reached the same conclusion had this error not occurred. The admission of the editorial as a basis to contradict appellants' expert witness, when the publication did not qualify as a "learned treatise," placed before the jury hearsay evidence which appellants were unable to rebut by way of cross-examination. Furthermore, several passages in the editorial contained references to matters prejudicial to appellants' cause, and which had no apparent relevance to the cause except to elicit sympathy from the jury.[4] See *Westinghouse Electric Corp.* v. *Dolly Madison Corp.* (1975), 42 Ohio St. 2d 122, 326 N.E. 2d 651; cf. *Hallworth* v. *Republic Steel Corp., supra.*

Appellants also challenge the trial court's instructions to the jury. Based upon the authority of *Congrove* v. *Holmes* (1973), 37 Ohio Misc. 95, 308 N.E. 2d 765, appellants requested the trial court to give the jury the following instruction:

"If you find by a preponderance of the evidence that Dr. Bartley or Dr. Angley ordered Garamycin to be administered to plaintiff, Alice R. O'Brien, with her consent, if any, and if you find that in securing said consent, Dr. Bartley or Dr. Angley failed to fully inform plaintiff of the potential side effects of said procedure, then said consent is no consent. And if you further find that as a direct result, plaintiff suffered loss of hearing, your verdict must be for plaintiff."

The trial court refused to submit appellants' instructions to the jury, and gave instead its own instruction on the law of informed consent. We determine that appellants' proposed instruction to the jury is based upon a misinterpretation of *Con-*

---

[4] For example, the publication states:

"[N]evertheless, if all goes well at the trial, the competent and exonerated physician has still been subjected to a harrowing and grotesque experience."

*grove, supra.* In our opinion, *Congrove* does not, nor does any holding of this court, mandate a jury instruction to the effect that a medical practitioner must, prior to administering a course of treatment, *fully inform* his patient of the potential side effects of the proposed medical procedure.[5] Therefore, the trial court properly rejected appellants' proposed jury instruction.

In view of the foregoing, the judgment of the Court of Appeals is reversed and the cause remanded to the trial court for further proceedings not inconsistent with this opinion.

*Judgment reversed.*

CELEBREZZE, C. J., HERBERT, W. BROWN, O'NEILL, SWEENEY, LOCHER and HOLMES, JJ., concur.

O'NEILL, J., of the Seventh Appellate District, sitting for P. BROWN, J.

---

[5] In *Bruni* v. *Tatsumi* (1976), 46 Ohio St. 2d 127, 346 N.E. 2d 673, this court rejected the argument that plaintiff's consent to surgery was ineffectual because she had not been adequately informed of the procedure administered to her. The court determined, at page 137, that the "plaintiff***either personally or through her husband and parents, was *fully informed* of the facts concerning each operational procedure to be performed***." (Emphasis added.) This ruling, based upon the facts and record presented in *Bruni*, should not be construed to mean that the disclosure found acceptable in *Bruni* represents the minimum disclosure required as a matter of law. In view of our resolution of the instant cause, and our lack of advisory jurisdiction, that question is reserved by this court for future determination.