WORTHINGTON CITY SCHOOLS, Appellant,

v.

ABCO INSULATION et al.; Basic, Incorporated, Appellee.

[Cite as *Worthington City Schools v. ABCO Insulation* (1992), 84 Ohio App.3d 144.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP–65.

Decided Dec. 3, 1992.

*Carlile, Patchen & Murphy, James C. Carpenter, Laurence E. Sturtz* and *John W. Seidensticker,* for appellant Worthington City Schools.

*Arter & Hadden, David C. Patterson, Richard D. Brooks* and *Nancy J. Manougian,* for appellee Basic, Incorporated.

WHITESIDE, Judge.

Plaintiff-appellant, Worthington City Schools, appeals from a jury verdict in favor of defendant-appellee, Basic, Incorporated ("Basic"), from the Franklin County Court of Common Pleas. Plaintiff raises four assignments of error as follows:

"I. The trial court erred by admitting into evidence testimony referring to a 'study' and article which were prepared specifically for litigation and which lack the reliability required for admission.

"II. The trial court erred by admitting into evidence testimony referring to a 'study' and article which was based on dissimilar and inappropriate out-of-court experiments.

"III. The trial court erred by admitting into evidence testimony which was inadmissible hearsay under Rule 802 of the Ohio Rules of Evidence.

"IV. The trial court erred by admitting into evidence contrived prejudicial testimony."

On June 18, 1985, plaintiff filed the complaint herein in the Franklin County Court of Common Pleas against several manufacturers of asbestos-containing ceiling plaster. Plaintiff sought to recover expenses incurred in removing and replacing the asbestos-containing materials in school buildings. On January 30, 1986, plaintiff amended its complaint to include Basic, Incorporated as a defendant. Basic had manufactured Kilnoise, an acoustical ceiling plaster, in the 1950s, which had been installed in some of the Worthington schools. Prior to trial, plaintiff dismissed all the defendants except Basic. The only remaining claim was based upon products liability, plaintiff claiming the Kilnoise ceiling product was defective. The jury returned a verdict in favor of defendant Basic, finding that the Kilnoise ceiling plaster was not defective. Worthington filed its notice of appeal.

During the 1950s, defendant manufactured and sold Kilnoise, an asbestos-containing acoustical plaster. Between 1955 and 1958, Kilnoise was installed in two Worthington school buildings, the high school and Colonial Hills Elementary. Between 1979 and 1985, the Environmental Protection Agency issued a series of publications which alerted schools about potential problems with asbestos and discussed the health risks involved. Plaintiff hired asbestos specialists to test its schools for the presence of asbestos. After identifying the asbestos-containing materials, plaintiff in 1985 decided to remove the materials and replace them at a cost of $485,300.

By the first assignment of error, plaintiff contends that the trial court erred by admitting testimony about an article published in a scientific journal, Regulatory Toxicology and Pharmacology, entitled "Airborne Concentrations of Asbestos in 71 School Buildings" ("71 Schools Article"). Plaintiff argues that the testimony was inadmissible because the article was prepared specifically for litigation. The article was written by defendant's expert, Dr. Corn, with fifteen other scientists. Dr. Corn compiled and analyzed air sampling tests conducted in seventy-one school buildings across the country which contained asbestos materials. The expert concluded that the levels of asbestos fibers in the air inside the schools were not higher than the levels in air outside the schools, and, therefore, no incremental health risk from asbestos existed in these buildings. The article was submitted for peer review before publication in the scientific journal.

■ Plaintiff argues the article was originally prepared specifically for litigation and, therefore, should be excluded, using the reasoning of *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 17 O.O.3d 98, 407 N.E.2d 490. In *O'Brien*, the Ohio Supreme Court held that published articles written with a view toward litigation do not have the same trustworthiness as articles written for the author's profession. If written for the profession, the author is thought to have a strong incentive to be fundamentally sound in order to be accepted by other members of the profession. As stated in *O'Brien*, at 164, 17 O.O.3d at 101, 407 N.E.2d at 494:

" * * * Where * * * the author publishes an article with a view toward litigation, or where he possesses a personal interest in a litigable matter, a probability of bias exists which undermines the logic supporting the admission of this material in evidence as an exception to the rule against hearsay. * * * "

The *O'Brien* court found an abuse of discretion by the admission of excerpts of an editorial published in the Journal of the American Medical Association because the article was written with a view toward litigation. The editorial was not a "learned treatise," but, rather, it was an "expression of an opinion" on a "controversial" subject which posed a risk of litigation for the author's professional colleagues. *O'Brien*, 63 Ohio St.2d at 164, 17 O.O.3d at 101, 407 N.E.2d at 494.

In this case, the expert admitted contacting companies for whom he had appeared as an expert witness in other cases. He used the data which was prepared for those other cases. However, even though he used the air samples test data which were prepared for those other cases, he was the senior author [1] of this article without reference to any pending litigation. In addition, the article was submitted for peer review and revised before it was published in a scientific journal. It is not unreasonable to conclude that this article better fits the definition and meets the concerns of a "scientific journal" than an "opinion expressed with an eye toward litigation" as the *O'Brien* case sets forth.

██ Additionally, an erroneous admission of "learned treatises" into evidence does not automatically require reversal. The admission must be prejudicial and affect the substantive rights of the complaining party. *O'Brien,* 63 Ohio St.2d at 164, 17 O.O.3d at 101, 407 N.E.2d at 494. Here, the plaintiff has not demonstrated that the admission was prejudicial. The article was not admitted as such but, instead, was referred to in testimony and was only a part of the expert's basis for his opinion. Additionally, defendant's expert testified about other studies with the same results from the government, the Health Effects Institute and the World Health Organization. Plaintiff did not object to this testimony. Therefore, these other studies corroborated his findings, and similar information was admitted into evidence even without the 71 Schools Article. Even though the background research may have involved preparation for litigation, the article itself does not clearly fit the definition of an article "written with an eye toward litigation" as in *O'Brien.* Therefore, plaintiff has not demonstrated that the admission of the evidence was prejudicial even if erroneous. The plaintiff's first assignment of error is not well taken.

██ By the second assignment of error, plaintiff contends that the trial court erred by permitting defendant's expert, Dr. Corn, to testify and refer to the 71 Schools Article, since it was based on dissimilar and inappropriate out-of-court experiments. Plaintiff argues that, since the air sample tests which formed the basis for the 71 Schools Article were conducted in schools which did not contain Kilnoise, the studies were too dissimilar to be a basis for his testimony. The rule for admissibility of out-of-court experiments or tests has been set forth by the Ohio Supreme Court in *St. Paul Fire & Marine Ins. Co. v. Baltimore & Ohio RR. Co.* (1935), 129 Ohio St. 401, 2 O.O. 396, 195 N.E. 861, in the first paragraph of the syllabus, as follows:

"Evidence of experiments performed out of court, tending to prove or disprove a contention in issue, is admissible if there is a substantial similarity between

---

1. The record does not reflect the identity of the fifteen co-authors.

conditions existing when the experiments are made and those existing at the time of the occurrence in dispute * * *[.]"

The conditions do not need to be identical, but only substantially similar to the conditions at the time of the occurrence in dispute. If there are dissimilarities, it must be determined how substantial they are. If the dissimilarities are not so distinct as to confuse the jury, the evidence of the tests is admissible, and the dissimilarities are considered as going to the weight of the evidence rather than admissibility. In *St. Paul Fire & Marine Ins.*, it is further stated in paragraph one of the syllabus, as follows:

" * * * [D]issimilarities, when not so marked as to confuse and mislead the jury, go to the weight rather than the admissibility of the evidence."

The determination of admissibility of out-of-court experiments is a matter within the sound discretion of the trial court and will not be disturbed by a reviewing court absent an abuse of discretion. *Columbus v. Taylor* (1988), 39 Ohio St.3d 162, 529 N.E.2d 1382; *St. Paul Fire & Marine Ins., supra,* at paragraph two of the syllabus; *Bush v. Hoelker* (Oct. 12, 1989), Franklin App. No. 89AP–185, unreported, 1989 WL 119992, citing *St. Paul Fire & Marine Ins.; Columbus v. Kasper* (1989), 61 Ohio App.3d 776, 573 N.E.2d 1163, citing *St. Paul Fire & Marine Ins.* Only in the event that there is no substantial similarity between the conditions should the reviewing court find that the trial court abused its discretion in admitting the evidence of the out-of-court experiments. *Tritt v. Judd's Moving Storage, Inc.* (1990), 62 Ohio App.3d 206, 574 N.E.2d 1178, citing *St. Paul Fire & Marine Ins.*, and *Bush, supra.*

■ In this case, defendant's expert, Dr. Corn, testified about air sample tests conducted in seventy-one different schools which contained asbestos materials. Although none of the tests involved Kilnoise, upon cross-examination the expert stated that, in his opinion, the results would not change if Kilnoise had been tested because Kilnoise was not significantly different from the products that were tested. Other than different manufacturers' products' being tested, and different base materials being analyzed, plaintiff produced no evidence that the tests were dissimilar. There was no evidence that the amount of asbestos in these products was different from Kilnoise, or that the danger from use was different. Although admissibility may be reasonably debatable, the trial court did not abuse its discretion in admitting expert's testimony about the out-of-court tests, since there was evidence of a substantial similarity between the test material and Kilnoise. Therefore, the plaintiff's second assignment of error is not well taken.

The third assignment of error also relates to defendant's expert testimony concerning the 71 Schools Article, plaintiff arguing that it was inadmissible

hearsay evidence under Evid.R. 802. Plaintiff also argues that there is no hearsay exception under Evid.R. 803 or 804 within which this article fits in order to be admissible.

In this case, the expert who testified for the defense and made reference to the article was one of the authors of the article. "Hearsay" is defined in Evid.R. 801(C) as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Here, the author of the article was testifying as to his own writing. The article itself, if independently introduced, would constitute hearsay, but, if relevant, the author can testify as to his personal knowledge upon which the article was predicated. Here, the article itself was not offered as independent evidence. Medical articles or treatises are not admissible as independent evidence. *Piotrowski v. Corey Hosp.* (1961), 172 Ohio St. 61, 15 O.O.2d 126, 173 N.E.2d 355. However, it is permissible to cross-examine an expert by comparing the expert's opinion to a treatise and, as well stated in *Bluebird Baking Co. v. McCarthy* (App.1935), 19 Ohio Law Abs. 466, 470, 3 O.O. 490, 494, 36 N.E.2d 801–805, the qualification of an expert may be based upon personal experience or reading standard works or both. In this case, the expert did not refer to an authority or treatise as such but, instead, referred to his own work. The article itself was not admitted as independent evidence. Rather, it was referred to only within the expert's testimony.

Moreover, R.C. 2317.36 specifically provides, as follows:

"A written report * * * prepared by an expert * * * containing the conclusions resulting wholly or partly from written information furnished by the cooperation of several persons acting for a common purpose, shall, in so far as the same is relevant, be admissible when testified to by the person, or one of the persons, making such report * * * without calling as witnesses the persons furnishing the information * * * if, in the opinion of the court, no substantial injustice will be done the opposite party."

Since R.C. 2317.36 is not inconsistent with the Rules of Evidence, written reports prepared by an expert containing conclusions resulting from the cooperation of several persons are admissible when testified to by the person or one of the persons making the report without having to call as witnesses the persons furnishing the information. R.C. 2317.38 allows the admission of the article into evidence as long as conditions, such as notice to the other party, are met, as they were here. Although the report was not admitted into evidence itself, defendant's expert could testify about the report since he wrote it. The same conclusion was reached in *Brown v. Spitzer Ford, Inc.* (App.1978), 11 O.O.3d 84. In *Brown*, a survey was conducted by an independent testing laboratory to investigate automobile repair facilities. The technician who conducted the survey

and compiled the results into a report was allowed to testify as an expert. The report was also held admissible under R.C. 2317.36. See, also, *Soukup v. Republic Steel Corp.* (1946), 78 Ohio App. 87, 33 O.O. 441, 66 N.E.2d 334.

 Some hearsay evidence necessarily is always involved with expert testimony. To become an expert, one must read and learn from sources which are necessarily outside the evidence at trial. It is this knowledge obtained from outside sources which qualifies a witness as an expert. *Kane v. Ford Motor Co.* (1984), 17 Ohio App.3d 111, 112, 17 OBR 173, 174–175, 477 N.E.2d 662, 664. However, the facts or data which an expert relies upon in testifying must be either perceived by the expert or based upon evidence admitted at trial. Evid.R. 703. Evid.R. 702 (definition of an "expert witness") and Evid.R. 703 together require a two-step process for the admission of expert testimony. See *State v. Minor* (1988), 47 Ohio App.3d 22, 546 N.E.2d 1343, wherein it is stated at 24, 546 N.E.2d at 1347:

" * * * First, Evid.R. 702 requires that the *trial court* determine whether the witness is qualified to give an expert opinion. Evid.R. 104(A). * * * Second, Evid.R. 703 mandates that the expert testimony *to be offered at trial* be based on either the personal perception of the expert or upon facts in the record. Accordingly, to the extent that the expert applies to the facts in evidence a scientific principle, theory, calculation, measurement, or table—which have qualified the witness as an expert—such principle, theory, calculation, measurement or table need not be in evidence if the predicate facts are in evidence. * * * " (Emphasis *sic*.)

The Rules of Evidence require that the trial court initially determine if the witness possesses the necessary requirements to be an expert. Evid.R. 702 defines an "expert witness" as one who possesses scientific, technical or other specialized knowledge which "will assist the trier of fact to understand the evidence or to determine a fact in issue." Here, there was no dispute that Dr. Corn is qualified as an expert witness. The dispute involves whether as a part of his expertise the 71 Schools Article is admissible in his testimony. The determination of whether a witness is qualified as an expert is one for the trial court. A reviewing court will not reverse a trial court's ruling on the qualification or competency of an expert witness absent a clear abuse of discretion. *State v. Hipkins* (1982), 69 Ohio St.2d 80, 82, 23 O.O.3d 123, 125, 430 N.E.2d 943, 945 (modified on other grounds by *State v. Gilmore* [1986], 28 Ohio St.3d 190, 28 OBR 278, 503 N.E.2d 147); *State v. Jones* (1981), 67 Ohio St.2d 244, 251, 21 O.O.3d 152, 157, 423 N.E.2d 447, 451; *Alexander v. Mt. Carmel Med. Ctr.* (1978), 56 Ohio St.2d 155, 157, 10 O.O.3d 332, 333, 383 N.E.2d 564, 565–566; *Ohio Turnpike Comm. v. Ellis* (1955), 164 Ohio St. 377, 58 O.O. 179, 131 N.E.2d 397, paragraph eight of the syllabus.

The second step requires that the expert testimony offered at trial be based either on personal perception or upon facts in evidence at the trial. Here, the article was not admitted as independent evidence so the expert was required to have perceived the knowledge. Evid.R. 703. The rule requirement of "perceived by the expert" refers to personal knowledge. In *State v. Solomon* (1991), 59 Ohio St.3d 124, 570 N.E.2d 1118, the experts were allowed to testify concerning the defendant's sanity, since they had personally examined him. Moreover, the fact that the opinions of the experts were partially based upon hospital records, police reports, and reports of other doctors did not change the ruling, because the experts had personal knowledge. The syllabus of *Solomon* holds that:

"Where an expert bases his opinion, in whole or major part, on facts or data perceived by him, the requirement of Evid.R. 703 has been satisfied."

In *State v. Jones* (1984), 9 Ohio St.3d 123, 9 OBR 347, 459 N.E.2d 526, the court reversed the admission of expert testimony based on medical reports because the experts had not prepared the reports or personally examined the defendant, nor were the reports admitted into evidence. Here, the expert prepared the report personally, since he was the author. He had personal knowledge of the predicate for the contents of the article, so the facts were "perceived by him" as required by Evid.R. 703.

The situation here is similar to that resolved by the fourth paragraph of the syllabus of *Ohio Turnpike Comm. v. Ellis, supra*. In *Ohio Turnpike Comm.*, an expert in appraising land testified as to the value of the land in question. He based his opinion in part upon revenue stamps on deeds conveying adjoining and nearby properties to ascertain the prices for which they had sold. Although this is technically hearsay evidence, the court found the expert's testimony admissible, since the revenue stamps were only a single factor utilized in reaching his opinion as to the value of the land in question even though the revenue stamps were the only source of the expert's knowledge of values of property in the vicinity. In this case, the expert had personal knowledge of the contents of the article as the author, and it was only a portion of the predicate for his opinion and his expertise. The trial court did not abuse its discretion in finding him qualified as an expert witness. Consequently, the plaintiff's third assignment of error is not well taken.

By the fourth assignment of error, plaintiff contends that the trial court erred by admitting into evidence "contrived prejudicial testimony." Plaintiff also contends that defendant's trial counsel tried to prejudice the jury with improper testimony and remarks. The first incident complained of is the testimony of a defense medical expert who remarked that the building in which the trial was held might contain asbestos in its materials. Plaintiff did not object to this

statement at trial and, thus, may not raise it for the first time on appeal. Evid.R. 103(A)(1).

■ The second incident complained of is the testimony of defendant's plastering expert. This expert testified that the plaster ceilings in the courtroom "looked like" Kilnoise acoustical plaster, the product involved in the litigation. Under Evid.R. 104(A), questions of admissibility of evidence are for the trial court to determine. All relevant evidence is admissible unless otherwise provided in the United States Constitution and Ohio Constitution, the Revised Code, or a procedural rule promulgated by the Ohio Supreme Court. Evid.R. 402. The exclusion of relevant evidence is required by Evid.R. 403 if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, of confusion of issues, or of misleading the jury. The trial court determines if the probative value is substantially outweighed. A trial court's decision to admit or exclude relevant evidence under Evid.R. 403 will not be reversed absent an abuse of discretion. In *O'Brien, supra,* 63 Ohio St.2d at 163, 17 O.O.3d at 100, 407 N.E.2d at 493, it is stated:

" * * * [W]hen the trial court determines that certain evidence will be admitted or excluded from trial, it is well established that the order or ruling of the court will not be reversed unless there has been a clear and prejudicial abuse of discretion." See, also, *State v. Lane* (1976), 49 Ohio St.2d 77, 3 O.O.3d 45, 358 N.E.2d 1081; *State v. Bayless* (1976), 48 Ohio St.2d 73, 2 O.O.3d 249, 357 N.E.2d 1035; *Smith v. State* (1932), 125 Ohio St. 137, 180 N.E. 695; *Lima v. Freeman* (1971), 27 Ohio App.2d 72, 56 O.O.2d 250, 272 N.E.2d 637; and *Humphrey v. State* (1984), 14 Ohio App.3d 15, 18, 14 OBR 18, 21, 469 N.E.2d 981, 984–985.

In this case, the trial court determined that the comparison of Kilnoise acoustical plaster to the courtroom ceiling was admissible. The ceiling involved in the litigation had been removed six years earlier, so no comparison of the actual ceiling was possible. Additionally, the expert did not testify that the courtroom ceiling was Kilnoise, or that the ceiling even contained asbestos. In fact, counsel for plaintiff even stated that he had no problem with the comparison as long as it was made clear that the expert was not suggesting that there was asbestos in the courtroom ceiling. Under these circumstances, there was no abuse of discretion.

■ Plaintiff also complains that the plastering expert attempted to burn a sample of the material that replaced the Kilnoise in order to show that the replacement was not as suitable as the Kilnoise had been because the replacement was not fireproof. The expert had already testified that he had attempted to burn the material outside the courtroom. Plaintiff argues that the transcript shows that the court attempted to stop the burning of the material in the

courtroom, but the witness lit a match anyway. The transcript does not substantiate plaintiff's contention. The court did not allow the witness to burn the replacement material in front of the jury. Rather than continuing to light it, however, the witness merely showed the jury the material he had already burned outside the courtroom. Moreover, counsel for plaintiff had already offered to stipulate that the current ceiling material was not as well suited for fire resistance purposes as the Kilnoise that had been removed. Again, the admissibility or exclusion of evidence is a determination for the trial court and will not be reversed absent an abuse of discretion. *O'Brien, supra.* Under the circumstances presented, the trial court did not abuse its discretion.

The last incident that plaintiff complains of is the remark made by opposing counsel in his closing argument. Counsel was referring to the plastering expert's testimony and reiterated that Kilnoise looked like portions of the courtroom ceiling. Plaintiff argues that this remark should have been excluded under Evid.R. 403(A). Plaintiff contends that an inference from the remarks was drawn by the jurors that the court would not allow them to be in an unsafe place and that this "inference" prejudiced the jury and should have been excluded. The determination of whether misconduct was sufficient to prejudice the jury is within the discretion of the trial court, and a reviewing court will not reverse absent an abuse of discretion. *Lance v. Leohr* (1983), 9 Ohio App.3d 297, 298, 9 OBR 544, 545, 459 N.E.2d 1315–1316. Attorneys are given wide latitude in closing arguments. *Pang v. Minch* (1990), 53 Ohio St.3d 186, 559 N.E.2d 1313, paragraph two of the syllabus; *State v. Champion* (1924), 109 Ohio St. 281, 289, 142 N.E. 141, 143–144. The determination of whether the bounds of permissible argument have been exceeded is initially within the discretion of the trial court and will not be reversed unless discretion is abused. *Pang, supra,* at paragraph three of the syllabus; *Sibert v. Columbus* (Feb. 27, 1992), Franklin App. No. 91AP–522, unreported, 1992 WL 41253; *Dillon v. Bundy* (1991), 72 Ohio App.3d 767, 596 N.E.2d 500. Here, counsel was reiterating evidence which had already been admitted. This does not constitute misconduct, much less misconduct so egregious as to require interference by the trial court. Plaintiff has not demonstrated that this remark prejudiced the jury. None of these remarks of which plaintiff complains was such that there was an abuse of discretion by the trial court in overruling plaintiff's objection. Therefore, the plaintiff's fourth assignment of error is not well taken.

For the foregoing reasons, all four assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

JOHN C. YOUNG, P.J., and DESHLER, J., concur.