**McALLISTER et al., Appellants,**

v.

**CONSOLIDATED RAIL CORPORATION et al., Appellees.**

[Cite as *McAllister v. Consol. Rail Corp.* (1995), 108 Ohio App.3d 212.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–950458.

Decided Dec. 29, 1995.

*Young, Reverman & Napier Co., L.P.A.,* and *Richard E. Reverman,* for appellants.

*Burns, White & Hickton* and *Patrick L. Mechas; Lindhorst & Dreidame* and *James L. O'Connell,* for appellees.

PAINTER, Judge.

Plaintiff-appellant Donald E. McAllister is a former employee of the Cincinnati Union Terminal Company ("CUT"). CUT was an Ohio corporation which had seven railroads, including defendants-appellees Consolidated Rail Corporation, C.S.X. Transportation, and Norfolk & Western Railway ("the railways"), as shareholders. These railways dissolved CUT in 1981.

While working at CUT, McAllister stripped insulation from railroad cars owned by CUT. McAllister alleges that the insulation in these cars contained asbestos products, and that he contracted asbestosis from his work stripping insulation.

McAllister and his wife, Joan, brought an action against the railways for negligently causing or permitting McAllister to be exposed to asbestos which caused his asbestosis due to these railways, placing asbestos and asbestos products into the stream of commerce. The McAllisters also made claims for punitive damages, enterprise liability and loss of consortium.

After an oral argument in chambers, the trial court granted the railways' motion for summary judgment. No record was made of the oral argument.

The McAllisters have appealed the summary judgment and assert in three assignments of error that the trial court erred by (1) granting the railways'

motion for summary judgment while material facts were still at issue; (2) using testimony given over objection during a deposition as a basis for summary judgment without ruling on the admissibility of the testimony; and (3) limiting the issue of liability to the railways' manufacture and production of asbestos when evidence existed that the railways were owners and shareholders of CUT, which had caused McAllister to be exposed to asbestos.

The McAllisters argue that the trial court cannot put the initial burden of producing evidence on them in response to the railways' motion for summary judgment, but rather that the initial burden of production is on the railways to establish specific reasons supported by evidence that they are entitled to judgment as a matter of law.

Under Civ.R. 56(C), the party seeking summary judgment has the initial burden to identify those elements of the nonmoving party's case which do not raise genuine issues of material fact and upon which the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 114–115, 526 N.E.2d 798, 801. When the moving party satisfies its burden, the nonmoving party cannot rest on the allegations in the pleadings, but has a "reciprocal burden" to set forth specific facts demonstrating that there is a "triable issue of fact." *Id.* at 115–116, 526 N.E.2d at 801; *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus (approving and following *Celotex, supra*).

Because the standard for summary judgment mirrors the standard for a directed verdict, the evidentiary material must establish that the nonmoving party's claim is more than simply colorable. *Celotex, supra*, 477 U.S. at 323, 106 S.Ct. at 2552, 91 L.Ed.2d at 273–274. Whether a genuine issue of material fact exists depends on whether the evidence presents "a sufficient disagreement to require submission to a jury" or whether it is so "one-sided that one party must prevail as a matter of law." *Turner v. Turner* (1993), 67 Ohio St.3d 337, 340, 617 N.E.2d 1123, 1126 (citing *Anderson v. Liberty Lobby, Inc.* [1986], 477 U.S. 242, 251–252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202, 213–214).

In this case, the trial court based its order granting the motion for summary judgment on McAllister's deposition testimony, McAllister's responses to the railways' requests for admissions and interrogatories, the affidavit of McAllister's counsel, and filings pertinent to the motion.

McAllister identified two potential sources of asbestos exposure that relate to his work at CUT: the "forming"[1] of yard engines ("goats"), and the repair of bent or broken steam connector pipes on railway cars.

---

1. By "forming," McAllister meant rebuilding and repairing the engines.

■ From a thorough review of this evidence, we find strong support for the proposition that the railways could not have negligently caused McAllister's asbestos injuries for the portion of the alleged exposure due to the forming of the goats, because McAllister's work on equipment containing asbestos was at the behest of CUT and exclusively on goats owned and operated by CUT. CUT was at all times a separate legal entity from the railways. Therefore, the railways could not have been directly negligent for McAllister's injuries from this alleged exposure.

■ With regard to the bent or broken steam connector pipes that allegedly contained asbestos, McAllister stated that he did not actually remove or replace the insulation on the bent or broken steam connector pipes that he observed on passenger cars. In fact, his exposure to these defective pipes was minimal. McAllister testified that he "jacked up" the cars so the pipefitters could remove the insulation, straighten the pipes, and then replace the insulation.[2] In response to interrogatories regarding the negligent actions of the railways, McAllister identified problems with the work environment. The work environment was clearly the responsibility of CUT, not the railways. In light of these statements, McAllister has failed to present a genuine issue of material fact whether any claimed exposure to the insulation around these pipes could have caused his alleged injuries.

■ As for these railways as carriers of asbestos materials across state lines, the pleadings do not allege a causal link with McAllister's asbestos injuries. A general statement or list of the railways' connections with asbestos is insufficient to establish the link of proximate causation for McAllister's alleged injuries. McAllister failed to mention even one instance where he was exposed to asbestos from the transportation of products on these railways, despite being asked to state each episode of asbestos exposure.

Therefore, we agree that the railways satisfied their initial burden with this evidence. At this point, McAllister had a "reciprocal burden" to set forth specific facts demonstrating that the alleged negligence of these railways had any causal connection to McAllister's alleged injuries. McAllister could have either rebutted his own testimony or supplemented it with new evidence. McAllister failed to sustain this burden.

We hold that the trial court did not put the *initial* burden of producing evidence on McAllister in the railways' motion for summary judgment, but held him only to the burden to rebut the evidence demonstrating that there was no

---

2. McAllister testified that he occasionally helped the pipe-fitters straighten a bent pipe after the insulation was removed and the pipe was heated, but he did not testify that he removed the insulation from these pipes himself.

remaining issue of material fact. Therefore, we overrule the first assignment of error.

■ In his second assignment of error, McAllister argues that he answered a question that called for a legal conclusion after his counsel objected; therefore, the answer should not have been admitted into evidence under Civ.R. 30(C), and should not have served as either an evidentiary basis for concluding that no material issues of fact existed or an admission of a party that limited his claim.

The question was: "What is it that you say those three railroads did that amounted to negligence?" McAllister answered subject to his counsel's objection, but the trial court did not rule on the objection. McAllister argues that without a ruling, the evidence remains inadmissible.

■ A trial court's ruling that certain evidence will be admitted or excluded from trial will not be reversed absent a showing of a clear and prejudicial abuse of discretion. *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 17 O.O.3d 98, 407 N.E.2d 490. An abuse of discretion involves more than an error in judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.

A trial court's failure to rule on an objection in a deposition does not imply that the testimony was either admitted, excluded, considered or rejected. However, even if we held that the admission of this evidence was error, it would be harmless error in this instance. The order of the trial court lacks any notation to demonstrate that it relied specifically on this evidence to grant summary judgment to the railways. Even though the railways cite McAllister's answer to this question as evidence that only the work performed on CUT engines was mentioned as a cause of his asbestos injuries, this answer is cumulative to other parts of the deposition testimony in which the *only* other relevant exposure to asbestos that McAllister noted was the admittedly minimal exposure to bent or broken steam connection pipes when he "jacked up" the cars so the pipefitters could remove the insulation, repair the pipes and reinsulate the pipes. McAllister explicitly stated that "when I got the asbestos, most of it was in the roundhouse." McAllister explained that the roundhouse was where "they formed the engines." He further explained that the engines were goats owned by CUT.

Therefore, we conclude that the admissibility of McAllister's answer to the question "What is it that you say those three railroads did that amounted to negligence?" was largely irrelevant, because ample evidence existed regarding the alleged instances in which McAllister was exposed to asbestos without this answer.

We hold that even if the trial court erred, such an error would be harmless. Accordingly, we overrule the second assignment of error.

McAllister argues that he should be entitled to allege the negligence of the railways for exposing him to asbestos through its own railcars and those of CUT, because the railways were "principal shareholders" of the now dissolved corporate entity, CUT. McAllister cites R.C. 1701.88(B), which establishes liability for torts against successors in interest of dissolved tortfeasor corporations.

McAllister failed to plead successor liability in his complaint. The only reference in the complaint stated that the Norfolk & Western Railway Company "transacted business in and about Hamilton County, Ohio including the Cincinnati Union Terminal for which defendant railroads exercised common ownership and undertook common responsibility" in the context of whether the Federal Employers Liability Act, Section 1, Title 45, U.S. Code ("FELA"), applied to these railways. McAllister later voluntarily dismissed his FELA claim.

While McAllister incorporated this statement in his general asbestos-exposure claim, he failed to state a claim against the railways as successors to CUT with respect to CUT's alleged negligence in allowing McAllister to be exposed to asbestos.

Therefore, we overrule the third assignment of error.

For the reasons stated above, we overrule all three assignments of error and affirm the judgment of the trial court.

*Judgment affirmed.*

GORMAN, P.J., and SUNDERMANN, J., concur.