DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas County Court of Common Pleas, which found appellant guilty of aggravated assault. For the reasons that follow, we affirm the judgment of the trial court.
On appeal appellant, Holly Quisenberry, sets forth the following assignment of error:
 "1. The findings of the trial court was [sic] contrary to the evidence and against the manifest weight of the evidence in supporting conviction and denying the affirmative defense of self defense.
 "2. The trial court abused its discretion by not allowing the admission into evidence [of] the offered policy reports of domestic violence by victim against defendant as to both to [sic] her state of mind and his character."
On June 11, 1997, appellant's estranged husband, Scott Quisenberry, went to appellant's home at 134 Wilamont in Toledo, Ohio, to celebrate his birthday with appellant's two children. Shortly after Scott arrived for the party, he and appellant began arguing over an automobile license plate that had been given to appellant's boyfriend.
Sometime during the argument, Scott ordered appellant's children to go to their bedroom. The couple then continued arguing in appellant's kitchen. The argument between Scott and appellant escalated, with Scott taking a knife sharpener and appellant taking a kitchen knife from a holder on the kitchen counter. A struggle followed, during which Scott received significant knife wounds on his neck, right index finger and right wrist. Appellant was superficially wounded on her left wrist.
After he realized he was injured, Scott exited the house and went into the front yard, where he screamed for a neighbor to call for help. Police and an ambulance arrived shortly thereafter, and appellant and Scott were taken to the hospital, where they were treated for their respective injuries.
On July 3, 1997, the Lucas County Grand Jury indicted appellant on one count of felonious assault, in violation of R.C.2903.11(A)(2), a second degree felony. On February 10, 1998, a trial to the court was held, at which the following relevant testimony was presented.
Patrolman Fry of the Toledo Police Department testified at trial that he responded to a call for police and medical assistance at 134 Wilamont on June 11, 1997. Upon his arrival, Fry found appellant and Scott in the front yard, bleeding from knife wounds. Patrolman Fry stated that Scott told Fry he picked up a knife sharpener and swung at appellant during an argument, after which appellant picked up a knife and cut Scott. Patrolman Fry further stated that when he entered appellant's home, he found a bloody knife sharpener and a bloody knife in the kitchen sink and a beer bottle on the floor.
Scott Quisenberry testified at trial that he has a criminal record, including grand theft of an automobile, burglary, and drug possession, and that he was involved in two previous domestic violence incidents with appellant. Scott further testified that on June 11, 1997, he asked appellant to give him a license plate to use on his car; however, appellant told Scott she did not have the plate because she had given it to her current boyfriend.
Scott stated that he went into the kitchen while he was arguing with appellant about the license plate. Scott further stated that when he tried to leave, appellant grabbed a knife and cut him. Appellant then blocked his exit and stated: "If I can't have you, no one will and we'll die together," after which she cut her own wrist with the same knife.
Toledo Police Detective Sifuentes testified at trial that he interviewed Scott in the hospital, and that Scott did not want to press charges at that time. Sifuentes stated that he also interviewed appellant in the hospital, and that appellant told him Scott had hit her with a beer bottle and grabbed a knife sharpener, after which appellant took a knife and stabbed Scott. Sifuentes further stated that on June 13, 1997, Scott came to the police station prepared to press charges against appellant.
Appellant testified at trial that Scott had physically and mentally abused her on many occasions before and during their marriage, and that appellant had called the police six or seven times as a result of the abuse. Appellant stated that she was charged with drug trafficking in Florida when she was caught selling drugs for Scott; however, the charges were dropped. Appellant testified that on June 11, 1997, Scott came to her home to celebrate his birthday with her two children from a prior relationship; however, she and Scott began arguing shortly after his arrival about the license plate. Appellant stated that, during the argument, Scott went into the kitchen, grabbed a knife sharpener, and swung at her. Appellant, thinking Scott had a knife in his hand, grabbed a knife herself and fought back. Appellant further stated that she did not know how her left wrist was cut.
On cross-examination, appellant stated that she did not remember telling both police and a case worker from Children's Services Bureau ("CSB") that Scott grabbed a knife sharpener, or that she said: "he came at me and I cut him." Appellant further stated that she told the grand jury on July 2, 1997 that Scott had grabbed a knife, not a knife sharpener, because she thought it was a knife at the time. Appellant admitted telling the grand jury that she had never been charged with a crime, even though she had been charged several years earlier with drug trafficking in Florida. Appellant stated that she lied to the police and the CSB worker about how her wrist was cut to avoid losing her children; however, she was telling the truth at trial to avoid going to jail.
Kathleen Horton, appellant's mother, testified at trial that, immediately after the incident, appellant told her the parties "cut each other." Horton further testified that Scott told Horton he had a knife sharpener and appellant had a knife.
At the close of all the evidence, appellant's counsel asked the trial court to admit into evidence copies of police reports concerning the past incidents of domestic violence between Scott and appellant. The state then sought to introduce into evidence copies of the CSB worker's notes, after stating that the CSB worker was unavailable to testify at trial. The trial court excluded both the police reports and the notes.
In addition to the above, the trial court made the following relevant statements:
 "It seems to [the court] this is a laid down aggravated assault, a felony of the fourth degree, because it was committed while the Defendant was under the influence of sudden passion or in a sudden fit of rage and that in such a condition she knowingly caused physical harm to another by means of a deadly weapon. There can certainly be no question that the knife in question is a deadly weapon.
"* * *
 "I find specifically that the Defendant failed in her burden to establish the affirmative defense of self defense and that she inflicted these injuries on Mr. Quisenberry knowingly by means of a deadly weapon while under the influence of sudden passion or in a sudden fit of rage * * *."
Thereafter, the court found appellant guilty of the lesser offense of aggravated assault in violation R.C. 2903.12(A)(2), a fourth degree felony.
On March 4, 1998, appellant filed a motion for a new trial. On March 30, 1998, the trial court sentenced appellant to serve twelve months in prison. On August 27, 1998, appellant's motion for a new trial was denied and, on September 28, 1999, a timely notice of appeal was filed.
Appellant asserts in her first assignment of error that the trial court's verdict was against the manifest weight of the evidence. Appellant argues in support thereof that the evidence presented at trial "supports that she acted in self defense," and that the trial court should not have found her guilty beyond a reasonable doubt because "the weight of the evidence clearly established that it was reasonable to find that both [Scott] and [appellant] were at times unbelievable * * *."
The Supreme Court of Ohio has ruled that "the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." State v.Thompkins (1997), 78 Ohio St.3d 380, 386. In this case, however, we must consider only whether appellant's conviction was against the manifest weight of the evidence.
Under a manifest weight standard, an appellate court sits as a "thirteenth juror" and may disagree with the fact finder's resolution of the conflicting testimony. Id. at 387. The appellate court, after reviewing the entire record, must weigh the evidence and all reasonable inferences therefrom, and consider the credibility of the witnesses. Only if we conclude that the trier of fact clearly lost its way in resolving conflicts in evidence and created a manifest miscarriage of justice will we reverse the conviction and order a new trial. Id.
The crime of aggravated assault is defined by R.C.2903.12(A)(2), which provides:
 "(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:
"* * *
 "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance, * * *.
In order to prevail on a claim of self-defense, an accused must establish by a preponderance of the evidence that:
 "(1) he was not at fault in starting the affray; (2) he had a bona fide belief that he faced imminent danger of death or great bodily harm; (3) his only means of escape was the use of such force; and (4) he violated no duty to retreat or avoid the danger." State v. Evans (June 19, 1998), Lucas App. No. L-97-1134, unreported, citing State v. Williford (1990), 49 Ohio St.3d 247, 249.
It is undisputed that appellant and Scott, appellant's estranged husband, were engaged in a heated argument shortly after Scott came to appellant's home to celebrate his birthday, and that the subject of the argument was the return of an automobile license plate that was in the possession of appellant's boyfriend. It is further undisputed that, during the argument, Scott and appellant went into the kitchen where appellant picked up a kitchen knife and Scott picked up what was later identified as a knife sharpener. A fight then occurred, during which Scott's neck, wrist and index finger were cut and appellant's wrist was superficially wounded.
In addition to the above, appellant admitted at trial that she lied to the police and a CSB worker as to the source of her own injuries, to avoid losing her children. Finally, appellant testified at trial that on July 2, 1997, she told the grand jury Scott swung at her with a "knife," even though she knew prior to giving her grand jury testimony that the object in Scott's hand was a knife sharpener.
This court has reviewed the entire record of proceedings before the trial court and, upon consideration thereof and the law, we cannot find that the trial court lost its way or created a manifest miscarriage of justice, either by not finding that appellant had established the affirmative defense of self-defense, or by finding appellant guilty of aggravated assault. Appellant's first assignment of error is not well-taken.
Appellant asserts in her second assignment of error that the trial court erred by excluding "cumulative evidence" of domestic violence between Scott and appellant, in the form of ten police reports filed by appellant against Scott.
Generally, the admission or exclusion of evidence is a matter committed to the sound discretion of the trial court. Statev. Finnerty (1989), 45 Ohio St.3d 104, 107; O'Brien v. Angely
(1980), 63 Ohio St.2d 159, 163. "The term `abuse of discretion' connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. Pursuant to Evid.R. 403(B), even relevant evidence may be excluded "if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence."
In this case, the trial court specifically noted on the record that appellant testified concerning past incidents of domestic violence between herself and Scott, and that the state questioned appellant concerning her statements to the CSB worker, even though the worker was unavailable to testify at trial. Thereafter, the court excluded both the police reports and the CSB worker's notes as cumulative evidence.
Upon consideration, this court finds that the trial court did not abuse its discretion by excluding the police reports offered into evidence by appellant. Appellant's second assignment of error is not well-taken.
The judgment of the Lucas County Court of Common Pleas is hereby affirmed. Court costs of these proceedings are assessed to appellant.
 JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 _______________________________ JUDGE Peter M. Handwork, P.J.
 _______________________________ JUDGE CONCUR. Richard W. Knepper, J.
 _______________________________ JUDGE Mark L. Pietrykowski, J.