JOURNAL ENTRY and OPINION
Appellant Joaquin C. Uy appeals the judgment of the trial court finding him guilty of a misdemeanor petty theft offense, and sentencing him to twenty days in jail and a fine of $500 plus costs. Uy assigns the following three errors for our review:
 I. THE COURT ERRED BY ADMITTING INTO EVIDENCE PHOTOGRAPHS OF ALLEGEDLY STOLEN PROPERTY AS SUBSTITUTES FOR THE PROPERTY ITSELF BECAUSE THE CITY FAILED TO MEET THE REQUIREMENTS OF OHIO R. CRIM. P. 26 BY OBTAINING A COURT ORDER AUTHORIZING THAT SUBSTITUTION.
 II. THE COURT ERRED AND DENIED DEFENDANT HIS RIGHT TO A FAIR TRIAL AND COMPULSORY PROCESS WHEN IT FAILED TO PERMIT THE DEFENDANT TO INTRODUCE EVIDENCE OF BIAS, PREJUDICE AND OF A MOTIVE TO MISREPRESENT BY THE CITY'S PRINCIPAL WITNESS AGAINST HIM.
 III. THE COURT ERRED IN SENTENCING THE DEFENDANT TO A TERM OF IMPRISONMENT FOR A MISDEMEANOR BY FAILING TO CONSIDER THE CRITERIA SET OUT IN OHIO REV. CODE 2929.21 AND 2929.22 AND BY FAILING TO FOLLOW THE PROCEDURES SET FORTH IN OHIO R. CRIM. P. 32.
Having reviewed the record and the legal arguments of the parties, we affirm the judgment of the trial court. The apposite facts follow.
August 27, 1998, appellee city of Richmond Heights charged Uy with one count of petty theft in violation of Richmond Heights City Ordinance S545.05 in connection with his taking of property from the Sears Roebuck store located at Richmond Town Square Mall. Uy entered a plea of not guilty and the case proceeded for jury trial on September 22, 1999.
At trial, the city presented four witnesses — Gottfried Freeman, Patrolman Mike Gerl, Sergeant James Nagy, and Katy Principe. Gottfried Freeman, former asset protection manager for Sears, testified that on August 27, 1998 he conducted a covert surveillance operation with the knowledge and approval of the store manager. Freeman testified he used a video camera to tape the entrances and exits to the store. In the course of a covert operation, Freeman testified he observed Uy removing something from the store and placing it into the bushes directly across from one of the stores side exits. Freeman stated he ran over to the brushes to inspect the items. Freeman testified the items were two Panasonic cassette players priced at $47.49 each. Freeman recorded the items on video and placed them back in the bushes. Freeman testified he then changed his vantage point to the second level of the parking lot to get a better view of the exits. Shortly after making this change, Freeman saw Uy coming out of the store carrying items which he again placed in the bushes. Freeman testified he shouted to Uy to stop, but Uy walked back into the store and locked the door. Freeman then retrieved two more items from the bushes. Freeman described those items as a camera priced at $46.99 and a set of binoculars costing $99.99. After retrieving the items from the bushes, Freeman stated he ran around to another entrance in an attempt to stop Uy. Freeman stated when he caught up to UY, Uy knocked the items from his arms, placed his security keys and radio in an ashtray and left. Freeman contacted the Richmond Heights Police Department. Upon their arrival, the police officers confiscated Freeman's video tape as evidence. Freeman testified he took pictures of the items in question and placed them in a file. Freeman stated he then placed the items in a bag under his desk because the store was being remodeled and he no longer had access to an evidence locker. He testified he turned the items over to the store manager before terminating his employment with Sears.
Freeman testified it was against store policy to remove items from the store. Freeman indicated Uy removed the items from the store without authorization. Freeman also stated Uy failed to return to work following the incident.
During Freeman's testimony, the city entered the video tape made by Freeman on August 27, 1998. The first part of the tape fails to show Uy taking the two cassette players and placing them in the bushes. However, the second portion of the tape showed Uy exiting the store and placing something in the bushes, exchanging words with Freeman, and entering the store. The tape then shows Freeman running around the building, catching Uy and asking to talk with him. Finally, the tape shows Uy walking away. Freeman testified Uy never returned to work.
On cross-examination, Freeman admitted he failed to tape Uy leaving the store and placing the first set of items in the bushes. Freeman also admitted he failed to record the camera or the binoculars on tape. Additionally, Freeman admitted he held a number of security-related positions at different companies and that he frequently changed jobs. However, Freeman denied having frequent disagreements with Uy prior to this incident and denied knowing whether Uy reported him to the store manager.
Richmond Heights Patrolman Mike Gerl testified he responded to a theft call at Sears Richmond Mall on the evening of August 27, 1998. He met with Friedman and then checked the area for Uy. Gerl did not find Uy in the area and returned to continue talking with Friedman regarding the incident. Gerl stated Friedman showed him a videotape of the incident and the merchandise removed in the theft. Gerl described the merchandise as two Panasonic cassette players priced at approximately $47 each, one cannon personal style camera priced at approximately $47 and on pair of Bushnel binoculars priced at $99.99. Gerl testified he then confiscated the video and took it to his police department were it was tagged as evidence and placed in the property room. Gerl stated, pursuant to Richmond Heights Police Department policy, he left the merchandise at Sears. Gerl identified Uy as the man he saw on the video.
Richmond Heights Police Sergeant James Nagy testified he responded to a theft call at Sears Richmond Mall on the evening of August 27, 1998. He looked for, but did not find the suspect in the area around the mall. Nagy testified he then spoke with Friedman about the incident. Friedman showed Nagy the actual merchandise removed from the store which Nagy described as two personal cassette players with headphones, a camera and film pack, and a pair of binoculars. Friedman also showed Nagy a video tape of the incident. Nagy identified Uy as the man he saw on the video. On cross-examination, Nagy testified he was present when Uy came into the police department to surrender in response to police inquires.
Kathy Principe, an asset protection agent with Sears, testified the Sears store went through a remodeling at the time of the Uy incident. She stated the evidence locker was removed from the store and was not in use at the time of the incident. Further, she testified she found the Uy case file maintained by the store in Friedman's old desk. She testified she remembered seeing a bag under Friedman's desk at one time. However, she did not know what it contained. She assumed the merchandise in question had been returned to the shelves for sale.
Following Principe's testimony, the city rested. Uy moved for dismissal, but the trial court denied his motion. Uy then attempted to call Jim Dryer, Sears' store General Manager. Uy wanted Dryer to testify that Uy complained to him about Friedman and that the general manager related the complaints to Friedman without identifying Uy; and that Friedman's performance as asset protection manager was at best adequate and sometimes substandard. Uy sought to introduce this evidence to impeach Friedman's claim that he had no personal knowledge of Uy making complaints and no personal conflicts with Uy. Uy claimed Friedman's substandard performance was relevant to the loss of the evidence in the case. The trial court denied Uy's request to offer such testimony concluding it lacked relevancy to the main issue in the case, and was an improper attempt to put Friedman on trial. However, the court suggested Uy could elicit testimony from the general manager on other issues including handling of the evidence and store's remodeling efforts.
Uy chose not to offer any testimony and instead rested his case in defense.
Following deliberations, the jury found Uy guilty of petty theft as charged. The defense requested a pre-sentence report; however, after determining that Uy had no prior record, the court denied Uy's request. The court agreed with prior comments of defense counsel that the offense of petty theft is more serious when committed by an employee against an employer, rather than when the offense is committed by a person who lacks a relationship with the victim. Consequently, the trial court sentenced Uy to twenty days in jail and a $500 (five hundred dollar) fine.
In his first assignment of error, Uy argues the trial court erred by admitting into evidence photographs of the stolen property as substitutes for the property itself without first obtaining a court order as required under Crim.R. 26.
Crim.R. 26 provides:
 Physical property, * * * under the control of a Prosecuting Attorney for use as evidence in a hearing or trial should be returned to the owner at the earliest possible time. To facilitate the early return of such property, where appropriate, and by court order, photographs, as defined in Evid. R. 1001(2), may be taken of the property and introduced as evidence in the hearing or trial. The admission of such photographs is subject to the relevancy requirements of Evid. R. 401, Evid. R. 402, Evid. R. 403, the authentication requirements of Evid. R. 901, and the best evidence requirements of Evid. R. 1002.
The purpose of Crim.R. 26 is to facilitate the return of evidence, held by the prosecutor, to its rightful owner in the shortest possible amount of time, rather than to create new rights for criminal defendants. State v. Peine (July 21, 1998) Lake App. No. 13-088, unreported.
The city argues it never possessed the actual stolen property; the only original evidence in the city's possession was the videotape of the incident. The city argues it offered the photographs not as substitutes for the actual property stolen, but rather, it offered the photographs to aid the jury in reviewing the videotape of the incident. Therefore, the city argues Crim.R 26 does not apply. We agree with the city's proposition.
In the instant case, the city never took possession of the actual stolen merchandise. The merchandise remained in the possession of its rightful owner, Sears. The city made the photographs from stills of the original videotape taken by Friedman of the incident. Uy offered no objection to the authenticity of the videotape and stipulated the videotape was in fact the source of the photographs. We conclude Crim.R. 26 inapplicable to the facts of this case.
Further, we note the failure of the city to produce the actual stolen merchandise is not fatal to Uy's conviction. See State v. Farmer (1951),156 Ohio St. 214, 102 N.E.2d 11; State v. Williams (1984),16 Ohio App.3d 232, 475 N.E.2d 168. The city charged Uy with petty theft in violation of Richmond Heights Codified Ordinance 545.05, which states:
 (a) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or the services in any of the following ways:
 (1) Without the consent of the owner or person authorized to give consent;
 (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
(3) By deception;
(4) By threat.
 (b) Whoever violates this section is guilty of petty theft, a misdemeanor of the first degree.
Friedman testified he saw Uy remove the property from the store and that Uy did so without authorization. Further, the videotape showed Uy removing some of the items from the store and placing them in the bushes. Friedman's testimony and the videotape constituted direct evidence of Uy's crime. While the actual stolen merchandise may have been helpful to the jury as demonstrative evidence, given the other evidence presented, the merchandise itself was not essential to prove the city's case. Accordingly, we overrule Uy's first assignment of error.
In his second assignment of error, Uy argues the trial court erred in failing to permit him to introduce extrinsic evidence of Friedman's alleged bias, prejudice and motive to misrepresent his testimony. We disagree.
Evid. R. 616, permits a party to impeach a witness by showing "[b]ias, prejudice, interest, or any other motive to misrepresent * * * either by examination of the witness or by extrinsic evidence." However, a trial court may limit a party's introduction of such evidence based on relevance, unfair prejudice, confusion, or needless cumulativeness. Evid. R. 403; see, also O'Brien v. Angley (1984), 63 Ohio St.2d 159,407 N.E.2d 490; State v. Jordan (April 29, 1999), Cuyahoga App. No. 73453, unreported; State v. Miller (July 28, 1994), Cuyahoga App. No. 65929, unreported. A reviewing court should not disturb the trial court's evidentiary ruling absent an abuse of discretion. Jordan. An abuse of discretion connotes more than an error in law or judgment; rather it implies that the trial court's attitude is unreasonable, arbitrary or unconscionable. Id. citing Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219, 450 N.E.2d 1140, 1142.
In the instant case, Uy sought to offer the testimony of the store's general manager that Jack Uy complained to the general manager about Friedman and the general manager relayed those complaints to Friedman without identifying Uy. Additionally, Uy wanted to introduce testimony from the general manager that Friedman's performance as an asset protection manager was substandard and he was in danger of being fired. Uy claimed he needed this evidence to contradict Friedman's testimony regarding his lack of knowledge of Uy's complaints and to show Friedman's performance affected the loss of the merchandise and handling of the theft investigation. However, the general manager's testimony regarding Uy's complaints would not contradict Friedman's assertion that he was not aware Uy had complained because the general manager did not identify Uy as the source of the complaints. Further, the relationship between Friedman's level of professional competence and ultimate loss of the merchandise in question was tenuous at best where the testimony of two witnesses demonstrated the loss of the merchandise was due to the confusion created by the store's remodeling efforts. Based on these facts, we conclude, the court properly excluded the evidence as proffered by Uy. Accordingly, we overrule Uy's second assignment of error.
In his third assignment of error, Uy argues the trial court erred in sentencing Uy to a term of imprisonment without first considering the criteria set out in R.C. 2929.22[1] and by failing to comply with the requirements of Crim.R. 32. Based on the plain language of the statute and rule in question, we conclude Uy's argument lacks merit.
R.C. 2929.22, which governs misdemeanor sentencing provides:
 (A) In determining whether to impose imprisonment or a fine, or both, for a misdemeanor, and in determining the term of imprisonment and the amount and method of payment of a fine for a misdemeanor, the court shall consider the risk that the offender will commit another offense and the need for protecting the public from the risk; the nature and circumstances of the offense; the history, character, and condition of the offender and the offender's need for correctional or rehabilitative treatment; any statement made by the victim under sections 2930.12 to 2930.17
of the Revised Code, if the offense is a misdemeanor specified in division (A) of section 2930.01 of the Revised Code; and the ability and resources of the offender and the nature of the burden that payment of a fine will impose on the offender.
 (B) The following do not control the court's discretion but shall be considered in favor of imposing imprisonment for a misdemeanor:
(1) The offender is a repeat or dangerous offender;
 (2) Regardless of whether or not the offender knew the age of the victim, the victim of the offense was sixty-five years of age or older, permanently and totally disabled, or less than eighteen years of age at the time of the commission of the offense.
 (C) The criteria listed in divisions (C) and (E) of section 2929.12 of the Revised Code that mitigate the seriousness of the offense and that indicate that the offender is unlikely to commit future crimes do not control the court's discretion but shall be considered against imposing imprisonment for a misdemeanor.
 (D) The criteria listed in division (B) and referred to in division (C) of this section shall not be construed to limit the matters that may be considered in determining whether to impose imprisonment for a misdemeanor.
 (E) The court shall not impose a fine in addition to imprisonment for a misdemeanor unless a fine is specially adapted to deterrence of the offense or the correction of the offender, the offense has proximately resulted in physical harm to the person or property of another, or the offense was committed for hire or for purpose of gain.
Failure to consider the sentencing criteria set forth in R.C. 2929.22
constitutes an abuse of discretion. City of Strongsville v. Cheriki (March 4, 1999), Cuyahoga App. No. 73800, unreported. However, where the trial court imposes a misdemeanor sentence which is within statutory limits, the reviewing court will presume the trial court complied with the requirements of R.C. 2929.22, absent a showing to the contrary. Id. Thus, unlike the requirements for felony sentencing under R.C. 2929.19
and contrary to Uy's assertions, R.C. 2929.22 imposes no duty on the trial court to state its reasons for selecting the misdemeanor sentence imposed. See R.C. 2929.19 and R.C. 2929.22.
In the instant case, the trial court sentenced Uy to twenty days in jail and a fine of $500 (five hundred dollars). The maximum penalty available to the court for the crime of petty theft as a misdemeanor of the first degree was not more than six months in jail and a fine of not more than $1,000 (one thousand dollars). R.C. 2929.21. Further, R.C.2929.22 permits the imposition of a fine in addition to imprisonment where the offense was committed for the purpose of gain. R.C.2929.22(E). Thus, we conclude the trial court imposed a misdemeanor sentence upon Uy, which fell within the statutory limits.
Additionally, Uy argues the trial court failed to comply with the requirements of Crim.R. 32(A)(1). Crim.R. 32(A)(1) requires that "[b]efore imposing sentence the trial court shall afford counsel an opportunity to speak on behalf of the defendant and also shall address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment." A trial court substantially complies with the requirements of Crim.R. 32(A)(1) where the trial court asks the defense if it has anything to add before sentence is passed, but does not personally address the defendant. State v. Smelcer (1993), 89 Ohio App.3d 115,623 N.E.2d 1219; State v. Moore (March 31, 1987), Lucas App. No. L-86-198 unreported; State v. Rexroad (January 21, 1987), Medina App. No. 1505, unreported. In such an instance, no prejudicial error requiring re-sentencing exists.
In the instant case, the transcript of the sentencing colloquy indicates the trial court stated [a]nything you want to say before I pass sentence? Defense counsel rather than Uy himself responded to the court's initial inquiry. From that point on, the court addressed its questions to counsel. However, Uy did respond in the negative when the court asked counsel whether Uy had a prior police record. While the trial court erred in failing to address Uy personally, the trial court did not discourage or otherwise prevent Uy from speaking. Further, Uy fails to indicate he possessed any information relevant to the court's selection of sentence, in addition to that offered by defense counsel. Under these circumstances, we conclude the trial court substantially complied with the requirements of Crim.R. 32(A)(1). Having concluded the court properly imposed sentence upon Uy, we overrule Uy's third assignment of error.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lyndhurst Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, A.J., and
LEO M. SPELLACY, J., CONCUR.
_______________________________ PATRICIA ANN BLACKMON, JUDGE
[1] In his assignment of error, Uy also refers to R.C. 2929.21, however, he fails to make any argument related to that section of the code in his brief.