DECISION AND JUDGMENT ENTRY
{¶ 1} Husband and wife appellants, Terry L. McCabe and Leah McCabe, appeal from a judgment entered by the Lucas County Court of Common Pleas in favor of appellees, Matthew Ransom and Auto Park, Inc. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} This personal injury action arises out of an admitted liability automobile accident that occurred on June 14, 2001, when a car being driven by appellant Terry McCabe was rear-ended by a car driven by appellee Matthew Ransom. A jury trial was held on the issue of damages, and on August 8, 2005, the trial court entered judgment for Terry McCabe ("McCabe") in the amount of $20,000, and for Leah McCabe, in the amount of $5,000.
 {¶ 3} The undisputed evidence relating to the issue of damages is as follows. Following the June 14, 2001 accident, both McCabe and Ransom drove their vehicles home. After arriving home, McCabe sought treatment in the emergency department at the Toledo Hospital. He was treated, diagnosed with multiple contusions and cervical strain, and released that evening. He then followed up with his family doctor, Recto Natividad, M.D., who referred him to physical therapy. McCabe discontinued his physical therapy in July 2001.
 {¶ 4} McCabe next sought consultation for injuries claimed in the June 14, 2001 accident in March 2003, some 20 months after his last physical therapy session. He was referred to neurosurgeon Ahmed Zakeri, M.D., who, after physically examining McCabe and reviewing various diagnostic studies, diagnosed cervical spondylosis of a mild to moderate degree that was exacerbated by the June 14, 2001 accident.
 {¶ 5} On September 1, 2004, McCabe sought a second neurosurgical consult, this time with Patrick McCormick, M.D. Like Dr. Zakeri, Dr. McCormick reviewed the available diagnostic studies and performed a physical examination. He testified that the diagnostic studies showed a pattern of degenerative disease that did not appear to be related to a traumatic injury, and that he could not diagnose an injury related to the June 14, 2001 accident.
 {¶ 6} In February 2005, McCabe sought a third neurosurgical consult, with Pete Poolos, Jr., M.D. Dr. Poolos testified that the accident resulted in McCabe's developing a cervical strain, and caused chronic pain in his neck, but that McCabe had no symptoms of nerve damage or spinal cord injury.
 {¶ 7} Finally, in June 2005, McCabe presented to pain management specialist Gregory Thomas, M.D. After electrodiagnostically testing McCabe, Thomas found that McCabe had a "generalized polyneuropathy," but he could not say within a reasonable degree of medical certainty that the condition was attributable to the June 14, 2001 automobile accident.
 {¶ 8} Proceeding pro se, appellants filed their complaint in this matter on June 13, 2003. An original trial date of October 26, 2004 was continued at appellants' request. On February 4, 2005, following a pre-trial attended by appellants and counsel for appellees, the trial court set forth a scheduling order that set a trial date of August 1, 2005; a final pre-trial on July 14, 2005; a deadline of May 1, 2005 for completion of discovery; a deadline of June 1, 2005 for completion of videotape depositions, with objections to be filed by July 1, 2005; a deadline of May 1, 2005 for disclosure of fact and expert witnesses by May 1, 2005; and a deadline of July 1, 2005 for the marking and exchange of exhibits, and for the filing of trial briefs, requested jury instructions, and motions in limine. Appellants sought and were granted several extensions of the discovery cut-off and video deposition completion dates. Ultimately, appellants were granted until June 24, 2005 to complete their discovery.
 {¶ 9} Between May 4, 2005 and June 24, 2005, appellants took the video depositions of no less than nine of McCabe's treating physicians. Trial began on August 1, 2005. In addition to the nine videotaped depositions, appellants' case-in-chief included testimony by Debra Achinger, M.D., a radiologist who interpreted an MRI conducted on June 21, 2005; Joseph Blaze II, a union official; appellee Matthew Ransom, as if on cross-examination; Donald Powell, McCabe's co-worker; McCabe himself; and McCabe's wife and fellow appellant, Leah McCabe. Appellees did not call any witnesses, and, for their case, relied upon the cross-examination of those witnesses called by appellants. On August 5, 2005, the jury returned their verdict in favor of appellants. Appellants timely appealed the trial court's entry of judgment on the verdict. In this appeal, they raise the following 15 assignments of error:
 {¶ 10} I. "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFA-PPELLEE IN OVERRULING THEIR MOTIONS TO EXTEND VIDEOTAPE DEPOSITIONS."
 {¶ 11} II. "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLEE IN OVERRULING THEIR MOTION TO RECONSIDER EXTENDING VIDEOTAPE DEPOSITIONS."
 {¶ 12} III. "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLEE IN NOT GRANTING PLAINTIFFS TIME TO REPLY TO DEFENSE'S OBJECTIONS IN DR. GREGORY THOMAS' TRIAL DEPOSITION."
 {¶ 13} IV. "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLEE IN ALLOWING THE MENTION OF RELIGIOUS BELIEFS IN TRIAL."
 {¶ 14} V. "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFS-APPELLANTS IN BARRING TESTIMONY DISCOVERED IN MEDICAL REPORTS."
 {¶ 15} VI. "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFS-APPELLANTS IN BARRING TESTIMONY FROM TRIAL VIDEOTAPES WHICH WILL BE AFFECTED BY THE ABOVE DECISIONS."
 {¶ 16} VII. "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFS-APPELLANTS IN BARRING TESTIMONY FROM A MAIN EXPERT WITNESS BY NOT ALLOWING DR. ROGER TRUE TO TESTIFY LIVE AT TRIAL."
 {¶ 17} VIII. "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFS-APPELLANTS IN LIMITING THE TIME FOR TRIAL."
 {¶ 18} IX. "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFS-APPELLANTS IN DENYING THEIR MOTION TO SUBMIT DISCOVERY AFTER HAVING ORDERED AN EXTENSION FOR DISCOVERY."
 {¶ 19} X. "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFS-APPELLANTS IN MAKING A CUT-OFF DATE FOR DISCOVERY WEEKS BEFORE TRIAL."
 {¶ 20} XI. "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFS-APPELLANTS IN NOT ALLOWING JOSEPH BLAZE TO TESTIFY AS TO PROBABILITY OF WORK TO DETERMINE POSSIBLE FUTURE LOST WAGES AND IN NOT ALLOWING HIS EXHIBITS TO BE ENTERED."
 {¶ 21} XII. "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFS-APPELLANTS IN NO ALLOWING PLAINTIFF TERRY McCABE TO ANSWER IN HIS OWN BEHALF AFTER BEING QUESTIONED AS A WITNESS BY DEFENSE COUNSEL."
 {¶ 22} XIII. "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFS-APPELLANTS IN NOT ALLOWING THE EXPERT WITNESS, DR. PETE POOLOS, TESTIMONY WHEREIN HE READS FROM A MEDICAL TEXTBOOK REGARDING SYMPTOMS OF CERVICAL SPINE CORD COMPRESSION."
 {¶ 23} XIV. "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFS-APPELLANTS IN THAT THE AWARD WAS INADEQUATE IN VIEW OF THE INJURIES SUSTAINED BY PLAINTIFF TERRY McCABE."
 {¶ 24} XV. "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFS-APPELLANTS IN NOT ORDERING DEFENDANTS TO PAY PLAINTIFFS' COSTS OF TRIAL."
 {¶ 25} We observe from the outset that although appellants have presented 15 assignments of error, they utterly fail to comply with App.R. 16(A)(7), which requires that an appellate brief include all of the following:
 {¶ 26} "(2) A table of cases alphabetically arranged, statutes, and other authorities cited, with references to thepages of the brief where cited.
 {¶ 27} "* * *
 {¶ 28} "(6) A statement of facts relevant to the assignments of error presented for review, with appropriatereferences to the record in accordance with division (D) of thisrule.[1]
 {¶ 29} "(7) An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, withcitations to the authorities, statutes and parts of the record on which appellant relies. * * *"
 {¶ 30} The law clearly provides that the appellant has the burden of showing error on appeal. Pennant Moldings, Inc. v. C J Trucking Co. (1983), 11 Ohio App.3d 248, 251. Absent such an affirmative showing, the court is bound to presume that the court below reached a proper result. State ex rel. Fulton v. Halliday
(1944), 142 Ohio St. 548, 549. It is not the function of the appellate court to construct a foundation for an appellant's claims; "[an appellant's] failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal." Hutchins v. FedEx Ground Package Systems,Inc., 9th Dist. No. 22852, 2006-Ohio-253, at ¶ 6, citing Kremerv. Cox (1996), 114 Ohio App.3d 41, 60. It is also not the duty of an appellate court to develop an argument in support of an assignment of error if one exists. Hutchins, supra, citingCardone v. Cardone (May 6, 1998), 9th Dist. Nos. 18349 and 18673, at 22. An appellate court will not guess at undeveloped claims on appeal. Hutchins, supra, citing McPherson v.Goodyear Tire Rubber Co., 9th Dist. No. 21499, 2003-Ohio-7190, at ¶ 31. "Mere mention of motions or questions that were allegedly wrongfully decided or denied is not sufficient to demonstrate error on appeal." State v. Duffield, 9th Dist. No. 22634, 2006-Ohio-1823, at ¶ 10.
 {¶ 31} In the instant case, although appellants have assigned numerous errors to the trial court, they have failed to make necessary statements, identifications and arguments regarding those alleged errors. For example, appellants' brief lacks any statement of facts, whatsoever. In addition, appellants' brief is void of arguments relating specific contentions; instead, appellants provide only sketchy allegations of error directed at several of the trial court's decisions. Appellants also fail to provide reasons in support of their allegations; instead, they incorporate by reference various arguments set forth in previous trial court filings. With respect to citations of authority, appellants list various rules, cases, and constitutional authority without providing the slightest explanation of their relevance to the matter at hand. For example, in their fourth assignment of error, appellants broadly cite as their only authority, and without offering any analysis as to its relevance, the entirety of the United States Constitution. Appellants similarly cite without explanation, and in connection with all but one of their remaining assignments of error, Civ.R. 59(A).
 {¶ 32} Upon consideration of the manifold, serious deficiencies in appellants' brief, we find that we are not required to address any of the assignments of error contained therein. Nevertheless, we will attempt, to the extent possible, to give consideration to the merits of the appeal.
 {¶ 33} As indicated above, appellants cite Civ.R. 59(A) in nearly all of their assignments of error.[2] Civ.R. 59(A) deals with motions for new trials. Civ.R. 59(B) expressly provides that "a motion for a new trial shall be served not later than fourteen days after the entry of the judgment". Id. No such motion was ever filed in this case. Accordingly, we find that Civ.R. 59(A) is inapposite herein.
 {¶ 34} With the exception of assignments of error XIV and XV, all of appellants' assignments of error involve matters relating to the admissibility of evidence. The law is well settled that determinations on matters relating to the admissibility of evidence are within the sound discretion of the trial court.Great Oaks Co., Inc. v. Cincinnati Ins. Co. (Mar. 29, 1984), 10th Dist. No. 83AP-42. As stated by the Supreme Court of Ohio inO'Brien v. Angley (1980), 63 Ohio St. 2d 159, at 163: "[W]hen the trial court determines that certain evidence will be admitted or excluded from trial, * * * the order or ruling of the court will not be reversed unless there has been a clear and prejudicial abuse of discretion." (Citations omitted.) "Abuse of discretion" connotes more than an error of law or judgment; rather, it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 35} Assignments of error I, II, XIII, IX, and X are properly addressed together, as they each involve the trial court's alleged failure to grant additional extensions of time. We observe at the outset that contrary to appellants' assertion in each assignment of error that they were prejudiced by a lack of sufficient time, appellants fail to show — and the record correspondingly fails to reveal — any such prejudice.
 {¶ 36} Appellants claim, in particular, that the trial court erred in disallowing extensions to conduct additional video depositions and to conduct further discovery. As indicated above, appellants sought and received several extensions of the deadlines originally set forth in the February 4, 2004 pre-trial order. Based upon our review of the record, we conclude that appellants had ample time to prepare their case. Thus, the trial court did not prejudicially abuse its discretion in its limitation of the time for obtaining discovery.
 {¶ 37} To the extent that appellants claim that the time limitations imposed by the court resulted in appellants having a diminished quantity of medical testimony available for presentation at trial, we note that a trial court has reasonable discretion in limiting the number of witnesses that may be called for examination on a given issue. Bird v. Young (1897),56 Ohio St. 210. Evid.R. 403(B) provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the considerations of undue delay, or needless presentation of cumulative evidence." In addition, Evid.R. 611(A) grants the trial court: "reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." Here, where appellants' case-in-chief included the testimony of no less than ten physicians, we cannot say that the trial court prejudicially abused its discretion in limiting, as it did, appellants' presentation of medical evidence.
 {¶ 38} Accordingly, appellants' first, second, eighth, ninth, and tenth assignments of error are found not well-taken.
 {¶ 39} We next consider appellants' third assignment of error, wherein it is stated that the trial court erred to the prejudice of appellants when it failed to grant them time to reply to appellees' objections in the trial deposition of Gregory Thomas, M.D. Thomas was called by appellants to provide evidence in their case-in-chief. His video deposition was taken on June 21, 2005. On July 28, 2005, appellees filed a copy of the deposition transcript along with a supplemental request for rulings on the objections raised within. Appellants neither responded to this request for ruling, nor did they request additional time to respond. The trial commenced a few days later. On August 4, 2005, appellants presented the testimony of Dr. Thomas as part of their case-in-chief. Because appellants have failed to show how they were prejudiced by the trial court's determination in this matter, appellants' third assignment of error is found not well-taken.
 {¶ 40} Appellants' fourth assignment of error states that the trial court erred to appellants' prejudice in allowing the mention of appellants' religious beliefs in trial. The only mention of appellants' religious beliefs in front of the jury in this trial occurred during appellants' direct examination of Dr. Thomas. In response to McCabe's inquiry, "What questions, if any, did you ask regarding my health?," Thomas answered: "Well I also, I did ask about, about, you know, what you did for a living. You had mentioned that you were an ironworker and you had done welding. I asked about drinking, okay alcohol, and you denied you were involved with ethanol. You told me that you were an ordained minister in the Jehovah's Witnesses, not that that precludes certain habits, but it would make it less likely to have a potential for drinking. That's basic, you know, and I asked you, of course, about the diabetes in trying to find anything that might be pertinent to why you would present with that kind of neuropathy."
 {¶ 41} This testimony was elicited by appellants, not appellees. Just prior to voir dire, the trial court and counsel for appellees assured appellants that neither the court nor counsel would mention that appellants were Jehovah's Witnesses. Appellants chose to introduce the testimony of Dr. Thomas as part of their case. Appellants have failed to show how this limited reference to their religion has prejudiced them in any way.
 {¶ 42} Assignments of error V and VII will be addressed together as they are apparently related. Appellants assert in their fifth assignment of error that the trial court erred to their prejudice in barring testimony discovered in medical reports. And in their seventh assignment of error, they assert that the trial court erred to their prejudice in prohibiting Roger True, M.D., from testifying live at trial. As stated previously, appellants took the videotaped depositions for use at trial of nine physicians, all of whom either treated McCabe or interpreted radiological studies that he underwent. The first witness whose testimony was recorded was Roger True, M.D. Dr. True became McCabe's treating family physician in April 2004. Dr. True testified on direct examination and then was cross-examined by counsel for appellees. In the days and weeks following Dr. True's deposition testimony, eight other physicians testified and were cross-examined, as was a physical therapist who provided treatment to McCabe. On the morning of the first day of trial, appellants sought to call Dr. True live, as he apparently had new opinions and evidence to offer. Appellants failed to make a proffer of what new or additional testimony or evidence would be elicited from Dr. True. Further, appellants failed to provide counsel for appellees with copies of any additional chart notes compiled since the May 4, 2005 deposition of Dr. True. The only record provided was a report of an MRI conducted on June 21, 2005. This particular MRI was interpreted by Debra Achinger, M.D., whom appellant called as a witness and who testified as to the results of the MRI at trial. The trial court, finding that appellants failed to provide appellees' counsel with Dr. True's additional chart notes or other records, denied their request to call Dr. True live.
 {¶ 43} By neglecting to make a proffer of whatever new or additional testimony that they had sought to elicit from Dr. True, appellants fell short of meeting their burden of showing error. State ex rel. Fulton, supra. Accordingly, appellants' fifth and seventh assignments of error are found not well-taken.
 {¶ 44} This court is unable to discern the issues presented in assignment of error VI. Therefore, we decline to give it any further consideration. See State ex rel. Fulton, supra. Appellants' sixth assignment of error is found not well-taken.
 {¶ 45} Appellants argue in their eleventh assignment of error that the trial court erred to their prejudice in rejecting evidence by witness Joseph Blaze II regarding future work opportunities. According to appellants, such evidence was to have been offered, and should have been admitted, for the purpose of supporting McCabe's claim for future lost wages. Blaze was the business manager and financial secretary of Ironworker's Local 55, of which McCabe was a member. Blaze was called by McCabe primarily to establish McCabe's wage loss as a result of the June 14, 2001 accident. The amount of past wage loss up to the time of trial was not in dispute. In an apparent effort to prove a future wage loss, McCabe attempted to elicit testimony from the witness as to the future availability of construction jobs in the Toledo area over the next 10 years. Counsel for appellees objected, and the trial court sustained the objection on the grounds that Blaze was not an economist. In fact, Blaze's sole qualification on the record was that he had a college degree in labor studies.
 {¶ 46} Pursuant to Evid.R. 702:
 {¶ 47} "A witness may testify as an expert if all of the following apply:
 {¶ 48} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 49} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 50} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
 {¶ 51} "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
 {¶ 52} "(2) The design of the procedure, test, or experiment reliably implements the theory;
 {¶ 53} "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."
 {¶ 54} Given the relative weakness of Blaze's qualifications to testify in the unquestionably speculative area of predicting future business prospects, we do not find that the trial court abused its discretion in limiting, as it did, Blaze's testimony. We note, as an aside, that any prejudice alleged to have resulted from the trial court's decision was minimized by Blaze's subsequent testimony, wherein he stated, without objection by appellees' counsel: "I anticipate our work for the next three to five years to be very good."
 {¶ 55} We next consider appellants' twelfth assignment of error, wherein appellants assert that the trial court erred to the prejudice of appellants when it prevented McCabe from answering in his own behalf after being questioned as a witness by counsel for appellees. Review of the trial transcript reveals this assignment of error to be wholly without merit. McCabe testified on direct examination, in narrative style, for approximately 15 pages. Counsel for appellees then cross-examined McCabe for approximately 17 pages. At the conclusion of the cross-examination, the court inquired of McCabe:
 {¶ 56} "THE COURT: Anything additional you wish to state? This is not argument, you're testifying pro se as a plaintiff.
 {¶ 57} "MR. McCABE: No, I don't want to prolong this any longer, Your Honor.
 {¶ 58} "THE COURT: Well, the answer then is no?
 {¶ 59} "MR. McCABE: Correct.
 {¶ 60} "THE COURT: You may step down then. Before I let the ladies and gentlemen of the jury retire for the noon hour, it's 12:15 now. Is there any other witness testimony to be — to be presented to these folks?
 {¶ 61} "MR. McCABE: Plaintiffs rest, Your Honor."
 {¶ 62} Following his cross-examination, McCabe was very clearly asked if he had anything to add. He very clearly stated that he did not. Appellants' twelfth assignment of error is found not well-taken.
 {¶ 63} Appellants contend in their thirteenth assignment of error that the trial court erred to their prejudice in disallowing testimony by Dr. Pete Poolos, Jr. wherein Poolos read from a medical textbook regarding symptoms of cervical spine cord compression. The disputed testimony involves an apparent attempt on McCabe's part to impeach his own expert witness on direct examination. The relevant portion of the colloquy proceeded as follows:
 {¶ 64} "Q: Okay. Doctor, are you familiar with the book, 'Bates Guide to Physical Examination and History Taking'?
 {¶ 65} "MR. WEITENDORF: Objection.
 {¶ 66} "A: No."
 {¶ 67} Following this question and answer, McCabe, over objection, had Dr. Poolos read selected portions of the subject textbook. This continued for several pages of the transcript of Dr. Poolos's deposition. It is clear from the testimony that Dr. Poolos in no way relied upon, or even referred to, the textbook in reaching his opinions in this case.
 {¶ 68} Evid.R. 706 pertinently provides:
 {¶ 69} "Statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art are admissible for impeachment if the publication is either of the following:
 {¶ 70} "(A) Relied upon by an expert witness in reaching an opinion;
 {¶ 71} "(B) Established as reliable authority (1) by the testimony or admission of the witness, (2) by other expert testimony, or (3) by judicial notice."
 {¶ 72} Even assuming that Dr. Poolos was declared a hostile witness, it is undisputed that he did not rely on the textbook he was questioned upon in reaching his opinion. Nor was the textbook established as a reliable authority. The trial court properly sustained appellees' objections to this testimony. Accordingly, appellants' thirteenth assignment of error is found not well-taken.
 {¶ 73} In their fourteenth assignment of error, appellants assert that the trial court erred to their prejudice in that the award was inadequate in view of the injuries sustained by McCabe. By this assignment of error, appellants argue by implication that the jury verdict in their favor was against the manifest weight of the evidence. Not surprisingly, appellants do not cite to the record nor do they make any argument as to why they believe that the verdict was "inadequate," except to state that "[i]n view of the bills incurred from this injury, the award did not cover the expenses of [appellants]."
 {¶ 74} The law is very clear in this area and provides that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279. In the instant case, appellants, over the course of a five-day trial, elicited the testimony of 10 physicians, plus a physical therapist, in order to present medical evidence of McCabe's injury claims to the jury. In addition to their own testimony, appellants called two of McCabe's co-workers to testify as to McCabe's injuries and their effect upon appellants. The jury had abundant opportunity to hear all of the witnesses called by appellants, to determine the credibility of their testimony, and to determine the weight of that testimony. The verdict was supported by competent, credible evidence. Accordingly, appellants' fourteenth assignment of error is found not well-taken.
 {¶ 75} Finally, we examine appellants' fifteenth assignment of error, wherein appellants contend that the trial court erred to their prejudice in not ordering appellees to pay appellants' costs of trial. Once again, appellants have failed to support their assignment of error with any argument or citation to authority. And, once again, the meritlessness of this assignment of error is immediately apparent. Review of the trial court's August 8, 2005 entry of judgment on the jury verdict reveals that appellants' costs were, in fact, assessed against appellees. Specifically, the judgment entry provides:
 {¶ 76} "This action came on for trial before the Court and a jury, and the issues having been duly tried and the jury having duly rendered its verdicts.
 {¶ 77} "It is ORDERED, ADJUDGED, and DECREED that the Plaintiff, Terry L. McCabe, recover of the Defendants, Matthew Ransom and Auto Park, Inc., the sum of $20,000, with interest thereon as provided by law, and his costs of this action.
 {¶ 78} "It is further ORDERED, ADJUDGED, and DECREED that the Plaintiff, Leah McCabe, recover of the Defendant, Matthew Ransom and Auto Park, Inc., the sum of $5,000.00, with interest thereon as provided by law, and the costs of this action." (Emphasis added.)
 {¶ 79} Appellants' claim is factually inaccurate and unsupported by law. Accordingly, the fifteenth assignment of error is found not well-taken.
 {¶ 80} For all of the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Singer, P.J., Skow, J., Parish, J., concur.
[1] App.R. 16(D) provides: "References in the briefs to parts of the record shall be to the pages of the parts of the record involved; e.g., Answer p. 7, Motion for Judgment p. 2, Transcript p. 231. * * * If reference is made to evidence, the admissibility of which is in controversy, reference shall be made to the pages of the transcript at which the evidence was identified, offered, and received or rejected."
[2] Specifically, appellants cite Civ.R. 59(A) in their first, second, third, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, and fourteenth assignments of error.